UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES COURT SECURITY OFFICERS,
ALEJANDRO ACEVEDO, FRANK FORSTER,
ANTHONY GATTO, BRIAN GILLESPIE, TIMOTHY
HERTEL, CEPHAS HUNTER, THOMAS KAUFER,
MARTA B. RIVERA, ROBERT RUGGIERO and
ANTHONY VENTURELLA,

                  Plaintiffs,

            -v-

UNITED STATES MARSHALS SERVICE,

                Defendant.

22 Civ. 1380 (VM)

---

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S PARTIAL MOTION TO DISMISS

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2721
E-mail: tomoko.onozawa@usdoj.gov

TOMOKO ONOZAWA
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ................................................................................................................2

      A.    CARES Act................................................................................................2

      B.    Centerra's Application for CARES Act Funding ..................................3

      C.    FOIA Request ................................................................................................5

      D.    Procedural History ................................................................................5

ARGUMENT ................................................................................................................7

I.      LEGAL STANDARDS ................................................................................7

      A.    Rule 12(b)(6) Motion to Dismiss................................................................7

      B.    Rule 12(b)(1) Motion to Dismiss................................................................7

II.     PLAINTIFFS' APA CLAIM FAILS BECAUSE THEY HAVE FAILED TO
      PLEAD THE EXISTENCE OF A FINAL AGENCY ACTION BY USMS TO
      DIRECT CENTERRA ON HOW TO ALLOCATE CARES ACT
      REIMBURSEMENTS TO ITS EMPLOYEES ................................................8

III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
      PLAINTIFFS' APA CLAIM ................................................................9

      A.    Plaintiffs Lack Article III Standing Under the APA Because USMS Did
          Not Take Any Final Action That Caused Plaintiffs' Alleged Injuries..................10

      B.    Plaintiff USCSO Lacks Article III Standing to Assert an APA Claim..................12

      C.    The Individual Plaintiffs Cannot Obtain Money Damages Under the APA..........13

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adeleke v. United States*,
    355 F.3d 144 (2d Cir. 2004)............................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................... 7

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
    968 F.2d 196 (2d Cir. 1992)............................................................................ 8
.

*Bano v. Union Carbide Corp.*,
    361 F.3d 696 (2d Cir. 2004)........................................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................... 7

*Bennett v. Spear*,
    520 U.S. 154 (1997)...................................................................................... 8

*Benzman v. Whitman*,
    523 F.3d 119 (2d Cir. 2008)........................................................................... 15

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993)............................................................................ 7

*Craig v. Boren*,
    429 U.S. 190 (1976)...................................................................................... 10

*Fairbanks North Star Borough v. U.S. Army Corps of Eng'rs*,
    543 F.3d 586 (9th Cir. 2008) ....................................................................... 8, 9

*Hernandez v. United States*,
    86 F. Supp. 2d 331 (S.D.N.Y. 2000)............................................................... 14

*Hubbard v. Adm'r, EPA*,
    982 F.2d 531 (D.C. Cir. 1992)....................................................................... 14

*Hunt v. Washington State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)...................................................................................... 12

*In re SEC* ex rel *Glotzer*,
   374 F.3d 184 (2d Cir. 2004).............................................................................................. 8

*James v. U.S. Dep't of Educ. Office for Civil Rights*,
   22 Civ. 5738 (LTS), 2022 WL 6807471 (S.D.N.Y. Oct. 11, 2022) ........................................ 14

*Kappa Printing Grp., LLC v. Archie Comic Publ'ns, Inc.*,
   No. 17 Civ. 7511 (VB), 2018 WL 2561032 (S.D.N.Y. June 4, 2018)..................................... 8

*King v. U.S. Dep't of Veterans Affairs*,
   728 F.3d 410 (5th Cir. 2013) ............................................................................................ 14

*Larson v. United States*,
   888 F.3d 578 (2d Cir. 2018)............................................................................................... 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 560 (1992)...................................................................................................... 9, 10

*N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*,
   684 F.3d 286 (2d Cir. 2012)............................................................................................. 12

*National Audobon Soc'y v. Hoffman*,
   132 F.3d 7 (2d Cir. 1997) ........................................................................................... 11, 13

*New York v. EPA*,
   350 F. Supp.2d 429 (S.D.N.Y. 2004)................................................................................. 8

*Nnebe v. Daus*,
   644 F.3d 147 (2d Cir. 2011)............................................................................................. 13

*Norton v. S. Utah Wilderness*,
   *All.*, 542 U.S. 55 (2004) .................................................................................................. 15

*ONRC Action v. Bureau of Land Mgmt.*,
   150 F.3d 1132 (9th Cir. 1998) ........................................................................................... 8

*Phifer v. City of New York*,
   289 F.3d 49 (2d Cir. 2002)................................................................................................. 7

*Polanco v. U.S. Drug Enf't Admin.*,
   158 F.3d 647 (2d Cir. 1998).............................................................................................. 14

*Port Washington Teachers' Ass'n v. Bd. of Educ.*,
   478 F.3d 494 (2d Cir. 2007)............................................................................................. 10

*Raum v. Town of Mount Pleasant,*
    09 Civ. 5431 (SCR), 2010 WL 11712763 (S.D.N.Y. Jan. 6, 2010) ........................................ 11

*Rendell-Baker v. Kohn,*
    457 U.S. 830 (1982)............................................................................................................ 11

*Rodriguez v. Winski,*
    444 F. Supp. 3d 488 (S.D.N.Y. 2020)................................................................................. 13

*Runaway Dev. Grp. v. Pentagen Tech. Int'l, Ltd.,*
    396 F. Supp. 2d 471 (S.D.N.Y. 2005)................................................................................... 8

*Shakhnes v. Berlin,*
    689 F.3d 244 (2d Cir. 2012)................................................................................................... 8

*Simon v. Eastern Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976)............................................................................................................... 10

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.,*
    752 F.3d 239 (2d Cir. 2014)................................................................................................... 7

*Ward v. Brown,*
    22 F.3d 516 (2d Cir. 1994)................................................................................................... 14

*Warth v. Seldin,*
    422 U.S. 490 (1975)............................................................................................................. 12

**Statutes**

5 U.S.C. § 552 .............................................................................................................................. 5

5 U.S.C. § 702 ............................................................................................................................ 14

5 U.S.C. § 704 .............................................................................................................................. 8

5 U.S.C. § 706(2)(A)............................................................................................................. passim

Coronavirus Aid, Relief, and Economic Security Act,
    Pub. L. No. 116–136, 134 Stat. 281 (2020) ...................................................................... passim

Defendant United States Marshals Service ("USMS" or the "Government") respectfully submits this memorandum of law in support of its partial motion to dismiss Plaintiffs' claim under the Administrative Procedure Act, as asserted in Count I of their complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This Administrative Procedure Act action was brought against USMS by United States Court Security Officers ("USCSO"), a labor union, and ten individual plaintiffs employed as Lead Court Security Officers (the "Individual Plaintiffs") (collectively, "Plaintiffs") by Centerra Group LLC, a private contractor that employs the security officers at federal courthouses, U.S. Attorney's Offices, and associated federal buildings pursuant to a contract with USMS.

In 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") permitted federal agencies like USMS to reimburse contractors for their employees' paid leave, including sick leave, when those employees could not access their federal work sites during the COVID-19 pandemic and could not perform their job duties remotely.  Plaintiffs claim that, after Centerra obtained CARES Act funding from USMS, Centerra excluded its Lead Court Security Officers from receiving any share of those funds.  Notwithstanding the absence of factual allegations identifying any USMS decision to prevent Lead Court Security Officers from receiving CARES Act funds, Plaintiffs vaguely claim that the agency's purported "refusal and/or failure . . . to make available to the Individual Plaintiffs CARES Act monies or reimbursement for lost wages or accrued leave" was arbitrary and capricious and violated Section 706(2)(A) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).  Plaintiffs seek economic damages in the form of lost wages and/or loss of accrued paid time off for the Individual Plaintiffs.

The Court should dismiss Plaintiffs' APA claim against USMS in its entirety. First, Plaintiffs have failed to state a claim against the Government upon which relief can be granted, because they have failed to plead that USMS took a final agency action relating to the allocation of CARES Act funds among Centerra's employees. Second, this Court lacks subject matter jurisdiction over Plaintiffs' APA claims, because Plaintiffs cannot show that USMS made any decision to allocate CARES Act funds to specific groups of Centerra employees and in turn, have not and cannot demonstrate that their purported injuries were caused by the Government's conduct. Additionally, the USCSO lacks associational or organizational standing to assert an APA claim on behalf of its members. Finally, the APA has not waived sovereign immunity for Plaintiffs to be awarded the economic damages they seek. Plaintiffs are also not entitled to any injunctive relief under the APA that USMS has a statutory obligation to provide.

Accordingly, this Court should dismiss Plaintiffs' APA claim against the Government in its entirety.

## BACKGROUND

### A.   CARES Act

 The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a $2.2 trillion stimulus bill passed by Congress in March 2020 to respond to the economic crisis caused by the COVID-19 pandemic. Pub. L. No. 116–136, 134 Stat. 281 (2020). As relevant here, Section 3610 of the CARES Act provided that "funds made available to an agency by this Act or any other Act may be used by such agency to . . . reimburse at the minimum applicable contract billing rates not to exceed an average of 40 hours per week any paid leave, including sick leave, a contractor provides to keep its employees or subcontractors in a ready state, including to protect the life and safety of Government and contractor personnel, but in no event beyond September 30, 2020." CARES Act § 3610, 134 Stat. at 414. Section 3610 of the Act applied

only to a contractor "whose employees or subcontractors cannot perform work on a site that has

been approved by the Federal Government, including a federally-owned or leased facility or site,

due to facility closures or other restrictions, and who cannot telework because their job duties

cannot be performed remotely during the public health emergency declared on January 31, 2020

for COVID-19."  *Id.*

### B.     Centerra's Application for CARES Act Funding

USMS is a component of the U.S. Department of Justice and, among other things, is

responsible for providing security for the federal judiciary and other federal offices and buildings

associated with the judiciary.  Compl. ¶ 16; *see also* Declaration of Angelica Spriggs ("Spriggs

Decl."), dated November 6, 2022, ¶ 2.  Centerra Group LLC ("Centerra") is a private contractor

of USMS that provides court security services on the agency's behalf in various federal

courthouses, U.S. Attorney's Offices in the Southern and Eastern Districts of New York, and

associated government offices.  Compl. ¶¶ 2, 17; Spriggs Decl. ¶ 3.  Centerra, in turn, employs

Lead Court Security Officers ("Lead CSOs") and Court Security Officers ("CSOs").  Compl. ¶ 2.

The ten Individual Plaintiffs are Lead CSOs employed by Centerra.  *Id.* ¶¶ 6–15, 17.  According

to the complaint, Lead CSOs in the Southern and Eastern Districts of New York are selected by

Centerra and are paid at a higher rate than CSOs.  *Id.* ¶ 18.  Plaintiff USCSO is the labor union

that exclusively represents CSOs, Lead CSOs, and other security officers stationed in federal

courthouses, associated probation offices, and U.S. Attorney's Offices nationwide, including the

Individual Plaintiffs.  *Id.* ¶¶ 5, 17.

According to the complaint, in May 2020, Centerra distributed to its CSO and Lead CSO

employees in the Southern and Eastern Districts of New York a one-page certification form

which informed them that Centerra was asking USMS for CARES Act funding to reimburse its

employees for lost wages and accrued leave of up to 40 hours per week during the COVID-19

pandemic.  *Id.* ¶ 20.  Centerra asked its employees to certify whether they had applied for or received federal or state benefits or compensation in lieu of wages during that time.  *Id.* ¶ 20. The Individual Plaintiffs certified that they had not, and returned their signed certifications to Centerra.  *Id.* ¶ 21.

In a January 18, 2021 communication, Centerra allegedly informed its employees that it had successfully obtained CARES Act funding from USMS "for some of their lost hours in the March 29, 2020 through July 31, 2020 time period."  *Id.* ¶ 22.  Centerra allegedly told its employees that it did "not have any control of how each government agency interprets the application of CARES Act, the dates of eligibility, or how much funding will be made available."  Compl. ¶ 22.  The same communication allegedly told Centerra employees that "funding for these hours is wholly at the discretion of each government agency," and that Centerra was "only able to reimburse up to a set number of agreed upon hours."  *Id.* ¶ 23. Additionally, Centerra reportedly told its employees there were "[s]trict conditions" to the CARES Act reimbursements, which included the need for the employee to have: been on active status at the time of reimbursement; been unable to work on a federally-approved worksite because of COVID-19 reasons; not received reimbursement in excess of 40 hours a week; certified that they had not received unemployment benefits from other sources; and not been paid for the same hours under local and/or state paid leave statutes.  *Id*.

Plaintiffs allege that, on or around January 18, 2021, Centerra distributed CARES Act reimbursements to CSOs—but not to Lead CSOs—to compensate them for lost wages and/or use of accrued paid time off between March 29, 2020 through July 31, 2020.  *Id.* ¶ 25.  Plaintiffs also allege that, in or around the spring of 2020, USMS again approved Centerra's request for CARES Act reimbursements for the period August 1, 2020 through September 30, 2020.  *Id*.

¶ 34.  Centerra "thereupon distributed reimbursement for lost wages and accrued leave to a number of CSOs in the Southern and Eastern Districts of New York, but not to any Lead CSOs." *Id.* ¶ 34.  Plaintiffs assert that none of the Individual Plaintiffs who are Lead CSOs have received any CARES Act funds from Centerra for lost wages and accrued paid time off for the time period from March 29, 2020 through September 30, 2020.  *Id.* ¶ 35.  As a factual matter, however, USMS never made any decision to direct Centerra to allocate its receipt of CARES Act reimbursements to specific categories of employees.  Spriggs Decl. ¶¶ 8–10.

### C.   FOIA Request

On April 13, 2021, USCSO, through its counsel, sent a request ("the FOIA Request") to USMS under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, which sought agency records relating to the following:

> Guidance or instructions given to USMS contractors who employ Court Security Officers (CSOs) with respect to how they should allocate CARES Act funds, including but not limited to the circumstances under which CSOs are eligible for reimbursement, the applicable time period(s) covered by the disbursements, and any appeal process for a CSO who believes he was entitled to funds but did not receive them.

Compl. ¶ 29.  *See also* Declaration of Charlotte Luckstone, dated November 4, 2022 ("Luckstone Decl."), ¶ 3, Ex. A.  At the time the complaint was filed, USCSO had not responded to the FOIA Request.  Compl. ¶ 33.

### D.   Procedural History

Plaintiffs filed this action on February 18, 2022.  [ECF No. 1].  The complaint asserted a first cause of action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), asserting that USMS's alleged "refusal and/or failure to make CARES Act funding available to the Individual Plaintiffs was arbitrary and capricious," Compl. at 9, and a second cause of action

under FOIA, which arose out of USMS's alleged "refusal and/or failure to timely make a determination on USCSO's FOIA request." *Id.*

On May 13, 2022, in accordance with the Court's Individual Practices, USMS filed a pre-motion letter regarding a partial motion to dismiss Plaintiffs' APA claim and Plaintiffs' response to that letter, and requested a pre-motion conference. [ECF No. 11]. In the interim, on August 1, and August 30, 2022, USMS released to Plaintiffs non-exempt portions of records responsive to the FOIA request. Luckstone Decl. ¶ 5 & Ex. B. The records produced to Plaintiffs represented USMS guidance to contractors pertaining to the Office of Management and Budget Memorandum M-20-22 dated April 17, 2020, the CARES Act, and e-mail correspondence with Centerra personnel regarding funding modifications specific to Centerra. *Id.* ¶ 6 & Ex. B. The face of the records indicated that USMS did not direct Centerra to allocate CARES Act funding among its employees in a certain manner. *Id.*

On October 14, 2022, the parties filed an executed Stipulation and Proposed Order of Voluntary Partial Dismissal under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' FOIA claim. [ECF No. 23]. By order dated October 17, 2022, the Court dismissed the FOIA claim. [ECF No. 24]. Accordingly, the sole claim remaining to be decided is Plaintiffs' APA claim.

By order dated August 9, 2022, the Court declined to schedule a pre-motion conference on USMS's anticipated partial motion to dismiss Plaintiffs' APA claim, and directed the parties to either indicate whether they consented to deeming the pre-motion letters as a fully-briefed motion or to proceed with full briefing. [ECF No. 14]. After the parties represented to the Court on August 16, 2022 that they wish to proceed with full briefing [ECF No. 15], USMS now moves to dismiss Plaintiffs' APA claim.

## ARGUMENT

### I.   LEGAL STANDARDS

#### A.      Rule 12(b)(6) Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court should begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  If well-pleaded factual allegations exist, the court must then determine whether "they plausibly give rise to an entitlement to relief." *Id.*  When determining the sufficiency of a plaintiff's claim under Rule 12(b)(6),

> [C]onsideration is limited to the factual allegations in [plaintiff's] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit.

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

#### B.      Rule 12(b)(1) Motion to Dismiss

On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction bears "the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).  In considering challenges to subject matter jurisdiction under Rule 12(b)(1) at the pleading stage, the court "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.*  The Court may also consider evidence extrinsic to the pleadings. *See Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002).  However, "argumentative inferences favorable to the party asserting jurisdiction should

7

not be drawn." *Kappa Printing Grp., LLC v. Archie Comic Publ'ns, Inc.*, No. 17 Civ. 7511
(VB), 2018 WL 2561032, at *2 (S.D.N.Y. June 4, 2018) (quoting *Atl. Mut. Ins. Co. v. Balfour
Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

## II. PLAINTIFFS' APA CLAIM FAILS BECAUSE THEY HAVE FAILED TO PLEAD THE EXISTENCE OF A FINAL AGENCY ACTION BY USMS TO DIRECT CENTERRA ON HOW TO ALLOCATE CARES ACT REIMBURSEMENTS TO ITS EMPLOYEES

"APA review is limited to (1) final agency action (2) not committed to agency discretion
by law (3) where Congress has not implicitly or explicitly precluded judicial review." *Larson v.
United States*, 888 F.3d 578, 587 (2d Cir. 2018). *See* 5 U.S.C. § 704.  An agency action is
"final" if two conditions are met: "(1) the action must mark the consummation of the agency's
decisionmaking process—it must not be of a merely tentative or interlocutory nature, and (2) the
action must be one by which rights or obligations have been determined, or from which legal
consequences will flow." *Shakhnes v. Berlin*, 689 F.3d 244, 260 (2d Cir. 2012) (quoting *Bennett
v. Spear*, 520 U.S. 154, 177–78 (1997)).

Here, Plaintiffs have failed to allege that the first prong of the finality test has been met.
For an action to "mark the consummation of the agency's decisionmaking process," there must
have been a "decisionmaking process" where the agency had "a full opportunity to consider and
correct its own mistakes." *Runaway Dev. Grp. v. Pentagen Tech. Int'l, Ltd.*, 396 F. Supp. 2d
471, 474 (S.D.N.Y. 2005) (quoting *New York v. EPA*, 350 F. Supp.2d 429, 434 (S.D.N.Y. 2004)
and *In re SEC* ex rel *Glotzer*, 374 F.3d 184, 192 n.8 (2d Cir. 2004)).  That decisionmaking
process must have been a "formal procedure," *Fairbanks North Star Borough v. U.S. Army
Corps of Eng'rs*, 543 F.3d 586, 592–93 (9th Cir. 2008), in which the agency "evaluate[s] the
merits of [the issue] to arrive at a reasoned, deliberate decision." *ONRC Action v. Bureau of
Land Mgmt.*, 150 F.3d 1132, 1136 (9th Cir. 1998).  A final agency decision establishes a position

that is "considered, definite and firm," and constitutes the agency's "last word" on the issue. *Fairbanks North Star Borough*, 543 F.3d at 593.

In this case, there is no final agency action for the Court to review under the APA because nothing in Plaintiff's complaint alleges that USMS made a deliberate decision following the consummation of a formal agency decisionmaking process to determine how Centerra's CARES Act reimbursements should be allocated among Centerra's employees. As Plaintiffs allege, Centerra applied to USMS to receive reimbursements for paid leave under the CARES Act, Compl. ¶ 20, and USMS approved Centerra's requests in 2020. *Id.* ¶¶ 22, 34. Centerra then distributed the CARES Act reimbursements it received from USMS to CSOs but not Lead CSOs. *Id.* ¶¶ 25, 34. If nothing else, Plaintiffs' complaint alleges that Centerra made the decision to distribute its CARES Act reimbursements to CSOs at the exclusion of Lead CSOs. Because the complaint is devoid of any allegations pointing to a "considered, definite and firm" decision by USMS to exclude Centerra's Lead CSOs from the receipt of CARES Act reimbursements, this Court should dismiss Plaintiffs' APA claim for failure to state a claim.

## III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' APA CLAIM

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing the Court's jurisdiction. Plaintiffs must allege facts that establish the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), namely, that: (1) there is an "'injury in fact,'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there is "a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* "Every plaintiff seeking to establish standing must prove

these three elements, even where . . .  he or she asserts 'third-party standing'—that is, he or she is attempting to resolve the rights of third parties who are not parties to the litigation but whose rights are likely to be 'diluted or adversely affected.'"  *Port Washington Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 498 (2d Cir. 2007) (quoting *Craig v. Boren*, 429 U.S. 190, 195 (1976)). As set forth below, none of the Plaintiffs have established Article III standing to assert their claims.

### A.   Plaintiffs Lack Article III Standing Under the APA Because USMS Did Not Take Any Final Action That Caused Plaintiffs' Alleged Injuries

For a plaintiff to establish the second element of Article III standing—a causal connection between the injury and the conduct complained of—the plaintiff's injury "has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).   However, Plaintiffs have not alleged and cannot demonstrate that USMS made a final "reasoned, deliberate" agency decision that "mark[ed] the consummation of" an agency decisionmaking process to prevent Centerra-employed Lead CSOs from receiving CARES Act reimbursements.  *See generally* Compl.; Spriggs Decl. ¶¶ 8–10.  Nothing in the records located and released by USMS to Plaintiffs in response to a FOIA request for "[g]uidance or instructions given to USMS contractors who employ Court Security Officers…with respect to how they should allocate CARES Act funds" shows that USMS decided that Centerra must exclude Lead CSOs from its allocation of CARES Act reimbursements to employees.  Luckstone Decl. ¶ 6 & Exs. A & B.

Instead, as alleged throughout Plaintiffs' complaint, it was Centerra that made the decision to allocate its CARES Act funding to CSOs at the exclusion of Lead CSOs.  *See* Compl. ¶ 25 ("Centerra distributed to CSOs (but not Lead CSOs) . . . CARES Act monies to compensate

them for lost wages and/or use of accrued paid time off for Covid-19 related reasons between March 29, 2020 and July 31, 2020); ¶ 26 ("In February 2021, USCO became aware that . . . Centerra had distributed CARES Act monies and reimbursement for lost wages and accrued leave to a number of CSOs . . . [but] it had not distributed CARES Act monies or reimbursement to any Lead CSOs"); ¶ 34 ("Centerra thereupon distributed reimbursement for lost wages and accrued leave to a number of CSOs . . . but not to any Lead CSOs.").  Plaintiffs have failed to demonstrate that their alleged economic losses were *caused* by any action on the part of USMS to exclude Lead CSOs from CARES Act reimbursements, because no such action ever took place.  Rather, Plaintiffs' economic injuries were caused by the decision of Centerra—a party not before this Court—to allocate CARES Act funds to certain CSOs but not others.  Because USMS did not make the decision that allegedly caused the Individual Plaintiffs' economic injuries, the Individual Plaintiffs lack standing to assert an APA claim.[1]  *Raum v. Town of Mount Pleasant*, 09 Civ. 5431 (SCR), 2010 WL 11712763, at *2 (S.D.N.Y. Jan. 6, 2010) (holding that plaintiffs failed to establish causation element of Article III standing, where "it is clear that the harm that Plaintiffs allege…was the direct result" of the actions of "a third party not before the court").  *Cf. Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of such private contractors [whose business depends on contracts with the government] do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").

---

[1] To be clear, the Court need not reach the legal issue of whether an agency action was arbitrary and capricious under 5 U.S.C. § 706(2)(A) because USMS never made any decision to direct Centerra to allocate CARES Act funding to certain categories of its employees.  *See* Spriggs Decl. ¶¶ 8–10.  If USMS had ever made such a decision—which it did not—the Court's "arbitrary and capricious" review would be confined to "the administrative record compiled by that agency when it made the decision."  *National Audobon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).  Here, however, the agency has not filed and cannot file a certified administrative record because the agency decision in question was never made.

B.      **Plaintiff USCSO Lacks Article III Standing to Assert an APA Claim**

Plaintiff USCSO can establish standing in one of two ways.  It can sue on behalf of its

members (known as "associational standing") or it can "have standing in its own right" (known

as "organizational standing").  *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d

286, 294 (2d Cir. 2012).  Because USCO has failed to plead facts that satisfy Article III on both

theories, its APA claim must be dismissed for lack of subject matter jurisdiction.

First, USCSO's APA claim should be dismissed because it lacks associational standing.

A plaintiff asserting associational standing must show that:

> (a) [I]ts members would otherwise have standing to sue in their own right; (b) the
> interests it seeks to protect are germane to the organization's purpose; and (c)
> neither the claim asserted nor the relief requested requires the participation of
> individual members in the lawsuit.

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977).  Whether an

association can meet the test for representative standing "depends in substantial measure on the

nature of the relief sought."  *Warth v. Seldin*, 422 U.S. 490, 515 (1975).  When an organization

seeks prospective relief, it may have standing to sue on behalf of its members, because "it can

reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of

the association actually injured."  *Id.*  However, when the organization brings suit for money

damages, as is the case here (Compl. at 9–10), the third prong of the associational test cannot be

met "because whatever injury may have suffered is peculiar to the individual member concerned,

and both the fact and extent of injury would require individualized proof."  *Id.* at 515–516.  As

the Second Circuit has held, there is "no Supreme Court or federal court of appeals ruling that an

association has standing to pursue damages claims on behalf of its members."  *Bano v. Union

Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004).  Here, the Individual Plaintiffs who are also

members of plaintiff USCSO have already brought suit on their own behalf to recover individual

damages they allegedly suffered.  Accordingly, USCSO is foreclosed from asserting associational standing to assert an APA claim on their behalf.

Second, the Complaint is devoid of any allegation that the USCSO itself has suffered a cognizable injury.  To assert such a claim, the organization must show "(1) a distinct and palpable injury in fact to itself as an organization; (2) that is fairly traceable to the challenged action; and (3) that a favorable decision would redress its injuries."  *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) (citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Here, Plaintiffs' APA claim alleges injuries sustained by the Individual Plaintiffs, *see* Compl. at 9, not the USCSO itself.  Therefore, this Court should dismiss any claim that USCSO seeks to assert under the APA under Rule 12(b)(1).

### C.      The Individual Plaintiffs Cannot Obtain Money Damages Under the APA

The Individual Plaintiffs assert that they "have suffered economic damages in the form of lost wages and/or loss of accrued paid time off," Compl. at 9, and seek an order directing "USMS to make the Individual Plaintiffs whole for their lost wages and/or loss of accrued paid time off during the March 29, 2020 through September 30, 2020 period."  *Id.* at 10.  This Court lacks subject matter jurisdiction over Plaintiffs' APA claim because the APA does not waive sovereign immunity for the economic damages Plaintiffs are seeking.

Under principles of sovereign immunity, the United States "may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction."  *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (citations omitted).  Such waivers of sovereign immunity must be "unequivocally expressed" in statutory text and cannot be implied.  *Id.* Section 706(2)(A) of the APA permits a court to "*hold unlawful and set aside* agency action, findings and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706(2)(A) (emphasis added).  However,

13

this Court cannot "hold unlawful and set aside" any decision that USMS made to ensure that

Centerra allocated CARES Act funding to its CSO employees at the exclusion of Lead CSOs,

because Plaintiffs have not alleged and cannot show that USMS ever made such a decision. *See*

*supra* Sections II, III.A.

> Section 702 of the APA further provides as follows:

> An action in a court of the United States seeking relief *other than money damages*
> and stating a claim that an agency or an officer or employee thereof acted or
> failed to act in an official capacity or under color of legal authority shall not be
> dismissed nor relief therein be denied on the ground that it is against the United
> States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added).  The Second Circuit has held that Section 702 of the APA

waives sovereign immunity "in an action seeking equitable relief from wrongful agency action,

except where . . . the action also seeks monetary relief . . . ."  *Polanco v. U.S. Drug Enf't Admin.*,

158 F.3d 647, 652 (2d Cir. 1998).  *See also James v. U.S. Dep't of Educ. Office for Civil Rights*,

22 Civ. 5738 (LTS), 2022 WL 6807471, at *2 (S.D.N.Y. Oct. 11, 2022) (citing 5 U.S.C. § 702)

(holding that the APA "provides an explicit waiver of sovereign immunity for individuals

seeking equitable relief if they have suffered 'a legal wrong because of agency action.'");

*Hernandez v. United States*, 86 F. Supp. 2d 331, 336–37 (S.D.N.Y. 2000) ("Section 702 waives

sovereign immunity in an action seeking equitable relief from wrongful agency action, except

where (i) the action also seeks monetary relief….").  Courts have construed the "other than

money damages" clause to mean that Congress did not provide "clear evidence of an intent to

waive sovereign immunity [under the APA] as to back pay."  *Hubbard v. Adm'r, EPA*, 982 F.2d

531, 533 (D.C. Cir. 1992).  *See also Ward v. Brown*, 22 F.3d 516, 520 (2d Cir. 1994) ("But the

APA does not waive sovereign immunity for money damages claims.  Back pay, as a claim for

money damages, falls outside the scope of the APA"); *King v. U.S. Dep't of Veterans Affairs*,

728 F.3d 410, 416 (5th Cir. 2013) (affirming district court dismissal of APA claim for lack of subject matter jurisdiction where complaint sought economic damages based on plaintiff's loss of veterans' benefits, because complaint sought "exclusively money damages, and the APA waives sovereign immunity only for claims 'seeking relief other than money damages.'").

To the extent the Individual Plaintiffs may seek to characterize their demand to be "made whole for their lost wages and/or loss of accrued paid time off" as affirmative injunctive relief under Section 706(1) of the APA, their claim still fails for lack of subject matter jurisdiction.  To be entitled to "affirmative injunctive relief" in the form of the payment of money under Section 706(1), the Individual Plaintiffs must show that USMS "failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  However, Plaintiffs have not, and cannot, point to any provision in the CARES Act or other statute that "required" USMS to ensure that any CARES Act reimbursements provided to a private contractor would be allocated to the contractor's Lead CSO employees.  In the absence of appropriate relief that can be granted under the APA, Plaintiffs' APA claim should be dismissed for lack of subject matter jurisdiction. *See, e.g., Benzman v. Whitman*, 523 F.3d 119, 132 (2d Cir. 2008) (no remedy available under 5 U.S.C. § 706(1) where there was "no specification of any discrete action that [the agency] is required to take" under applicable law).

## CONCLUSION

For the foregoing reasons, the Court should grant USMS's motion under Rule 12(b)(1) and Rule 12(b)(6) and dismiss Plaintiffs' APA claim.

Dated:  November 7, 2022
        New York, New York

                                Respectfully submitted,

                                DAMIAN WILLIAMS
                                United States Attorney for the
                                Southern District of New York

                        By:     /s/ Tomoko Onozawa
                                TOMOKO ONOZAWA
                                Assistant United States Attorney
                                86 Chambers Street, 3rd Floor
                                New York, New York 10007
                                Tel.:  (212) 637-2721
                                E-mail: tomoko.onozawa@usdoj.gov