UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

UNITED STATES COURT SECURITY
OFFICERS, ALEJANDRO ACEVEDO, FRANK
FORSTER, ANTHONY GATTO, BRIAN
GILLESPIE, TIMOTHY HERTEL, CEPHAS
HUNTER, THOMAS KAUFER, MARTA B.
RIVERA, ROBERT RUGGIERO AND ANTHONY
VENTURELLA,

                    Plaintiffs,

          v.

UNITED STATES MARSHALS SERVICE,

                    Defendant.

-------------------------------------------------------------- x

Civil Action No. 1:22-cv-01380-VM


**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Kate M. Swearengen
Matthew E. Stolz
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, New York 10022
Telephone: (212) 563-4100
Facsimile:  (212) 695-5436

Counsel for Plaintiffs

9876711.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL ALLEGATIONS .................................................................................. 3

    The Individual Plaintiffs ............................................................................ 3

    The CARES Act Funds .............................................................................. 3

    Centerra Announces USMS Has Approved CARES Act Funds ...................... 4

    USCSO's FOIA Request ............................................................................ 5

    USCSO and the Individual Plaintiffs File Suit ............................................. 6

ARGUMENT ....................................................................................................... 7

I.      PLAINTIFFS HAVE ADEQUATELY PLEADED FINAL AGENCY ACTION ............ 8

II.     THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE APA
       CLAIM ............................................................................................. 11

      A.    USMS's Standing Arguments Turn on a Factual Conclusion
            that the Court Cannot Make at this Time .............................................. 11

      B.    Plaintiffs Have Adequately Pleaded Causation ..................................... 13

      C.    There Is No Reason for the Court to Consider USCSO's Standing .................... 15

      D.    Plaintiffs Seek Equitable Relief, Not Money Damages ........................... 16

      E.    Agency Decisions Regarding CARES Act Funding
            Are Reviewable Under the APA ........................................................ 18

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. United States*,
 71 F.3d 475 (2d Cir. 1995)..................................................................................17

*Alliance of Am. Insurers v. Cuomo*,
 854 F.2d 591 (2d Cir. 1988)................................................................................7, 8

*Amador v. Mnuchin*,
 476 F. Supp. 3d 125 (D. Md. 2020)....................................................................17

*Ashland Inc. v. Morgan Stanley & Co.*,
 652 F.3d 333 (2d Cir. 2011)..................................................................................7

*Bowen v. Massachusetts*,
 487 U.S. 879 (1988).......................................................................................16, 17

*Clinton v. City of New York*,
 524 U.S. 417 (1998)..............................................................................................15

*Confederated Tribes of the Chehalis Reservation v. Mnuchin*,
 976 F.3d 15 (D.C. Cir. 2020), *rev'd on other grounds by Yellen v.
 Confederated Tribes of the Chehalis Reservation*, 141 S. Ct. 2434 (2021) ...........9

*De La Mota v. U.S. Dep't of Educ.*,
 No. 02 Civ. 4276 (LAP), 2003 WL 21919774 (S.D.N.Y. Aug. 3, 2003) ...............14

*Defy Ventures, Inc. v. U.S. Small Business Admin.*,
 469 F. Supp. 3d 459 (D. Md. 2020), *dismissed as moot by Carmen's Corner
 Store v. Small Business Admin.*, 520 F. Supp. 3d 726 (D. Md. 2021) ....................10

*Dep't of Commerce v. New York*,
 139 S. Ct. 2551 (2019)..........................................................................................14

*Doe v. Trump*,
 No. 20-cv-2531, 2020 WL 7337818 (N.D. Ill. Dec. 14, 2020)................................9

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
 543 F.3d 586 (9th Cir. 2008) ................................................................................10

*Horne v. Flores*,
 557 U.S. 433 (2009)..............................................................................................15

*Hubbard v. Administrator, EPA*,
 982 F.2d 531 (D.C. Cir. 1992) ..............................................................................17

*IUE AFL-CIO Pension Fund v. Herrmann*,
  9 F.3d 1049 (2d Cir. 1993) ................................................................................7

*Kamen v. Am. Telephone & Telegraph Co.*,
  791 F.2d 1006 (2d Cir. 1986) ..............................................................................7

*King v. U.S. Dep't of Veterans Affairs*,
  728 F.3d 410 (5th Cir. 2013) .............................................................................18

*Linea Area Nacional de Chile S.A. v. Meissner*,
  65 F.3d 1034 (2d Cir. 1995) ..............................................................................17

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2011) ................................................................................7

*New York v. Scalia*,
  464 F. Supp. 3d 528 (S.D.N.Y. 2020) ...............................................................13

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ............................................................................................19

*Oakley v. Devos*,
  No.20-cv-03215-YGR, 2020 WL 3268661 (N.D. Cal. June 17, 2020), *aff'd*
  No. 20-16564, 2021 WL 3624854 (9th Cir. May 20, 2021) .................................9

*ONRC Action v. Bureau of Land Mgmt.*,
  150 F.3d 1132 (9th Cir. 1998) ...........................................................................10

*Raum v. Town of Mount Pleasant*,
  No. 09 Civ. 5431 (SCR), 2010 WL 11712763 (S.D.N.Y. Jan. 6, 2010) ................15

*Rendell-Baker v. Kohn*,
  457 U.S. 830 (1982) ...........................................................................................15

*Robin v. Overseas Military Sales Corp.*,
  21 F.3d 502 (2d Cir. 1994) ..................................................................................7

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008) ................................................................................7

*Scholl v. Mnuchin*,
  494 F. Supp. 3d 661 (N.D. Cal. 2020) ............................................................9, 11

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016) .............................................................................................8

*UFCW Local 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ...........................................................................................16

*In re Vestavia Hills, Ltd.*,
    630 B.R. 816 (S.D. Cal. 2021) ........................................................................10

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*,
    429 U.S. 252 (1977) .......................................................................................15

*Ward v. Brown*,
    22 F.3d 516 (2d Cir. 1994) ............................................................................18

*Washington v. Devos*,
    466 F. Supp. 3d 1151 (E.D. Wash. 2020) .....................................................10

**Statutes**

5 U.S.C. § 702 ...........................................................................................................16

5 U.S.C. § 706 .............................................................................................................6

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134
    Stat. 281 (2020) ................................................................................... *passim*

Freedom of Information Act, 5 U.S.C. § 552 ..............................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ..............................................................................................7

Fed. R. Civ. P. 12(b)(6) ..............................................................................................7

## PRELIMINARY STATEMENT

This is a lawsuit brought by ten Lead Court Security Officers (the "Individual Plaintiffs") against the United States Marshals Service ("USMS") challenging as arbitrary and capricious USMS's allocation of CARES Act funding to their exclusion.  The Individual Plaintiffs are essential workers charged with ensuring the safety of the buildings, personnel and visitors to the federal courthouses, associated probation offices, and U.S. Attorney's Offices in this District and in the Eastern District of New York.

In March 2020, when New York became the epicenter of the global Covid-19 pandemic, in-person court and other proceedings were reduced and at times halted altogether. USMS reduced staffing accordingly, and although the Individual Plaintiffs continued to report to their jobsites in Manhattan, Brooklyn and Poughkeepsie to make sure that the buildings and their skeleton crew of personnel remained protected and that the federal judiciary continued to function, they lost work hours to their economic detriment.  Some of them used accrued leave to cushion the financial effect of USMS's staffing reduction.

In May 2020, Centerra, a Constellis Company ("Centerra"), the Individual Plaintiffs' federal contractor employer, distributed to its Court Security Officers ("CSOs") and Lead CSOs ("Leads") a one-page form.  That form advised employees that Centerra was in the process of seeking reimbursement from USMS under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which Congress had passed to keep contractors in a ready state by compensating their employees for lost work hours due to Covid-19, and asked employees to certify whether they had applied for or received benefits or compensation in lieu of wages during the Covid-19 national emergency.  The Individual Plaintiffs all signed the certification indicating that they had not applied for or received such benefits or compensation and returned the paperwork to Centerra.

1

In or about January 2021 and later that spring, Centerra secured CARES Act monies from USMS to compensate its employees for their lost hours and accrued leave between March 29, 2020 and September 30, 2020.  Centerra then distributed the monies to the CSOs, but not to any of the Leads and not to any of the Individual Plaintiffs, with the explanation that USMS had determined the criteria for reimbursement and that Centerra had no control over USMS's decision making in that regard.

Through their labor union, United States Court Security Officers ("USCSO"), the Individual Plaintiffs requested information from Centerra and USMS as to the criteria that informed USMS's instruction that the Leads should not receive any CARES Act monies. Centerra refused to provide the information.  USMS told USCSO to file a Freedom of Information Act ("FOIA") request.  In April 2021, USCSO filed a FOIA request.  Almost a year later, having received no substantive response from USMS, Plaintiffs filed this lawsuit.

In August 2022, USMS produced documents responsive to the FOIA request.  As a result, Plaintiffs stipulated to the dismissal of their FOIA claim.  USMS now moves to dismiss the lawsuit's remaining claim brought under the Administrative Procedure Act ("APA") by using the FOIA documents and two declarations to introduce facts not set forth in the Complaint – most egregiously, an assertion that "[a]t no time did USMS direct Centerra in any way as to how to allocate the CARES Act funding it received among its Court Security Officers and its Lead Court Security Officers."

As we explain below, the Court should not consider USMS's declarations.  But even if those declarations are considered, USMS's motion to dismiss pursuant to Rule 12(b)(6) should be denied.  Plaintiffs have adequately pleaded the existence of a final agency action by USMS with respect to its decision as to how to allocate CARES Act monies.  USMS's motion to

dismiss pursuant to Rule 12(b)(1) should likewise be denied because (1) it turns on a factual

conclusion that is premature for the Court to make; (2) Plaintiffs have adequately pleaded

causation; (3) Plaintiffs seek equitable relief, not money damages; and (4) agency decisions

regarding CARES Act funding are reviewable under the APA.

## **FACTUAL ALLEGATIONS**

Plaintiffs present a summary of the relevant facts below, which are drawn from

the Complaint ("Compl.") (Docket No. 1).

The Individual Plaintiffs

The Individual Plaintiffs are ten Lead CSOs who work at various federal courts,

associated probation offices and U.S. Attorney's offices in the Southern and Eastern Districts of

New York.  They are members of a labor union, USCSO, which has a collective bargaining

agreement with their federal contractor employer, Centerra.  Centerra, in turn, has a contract with

USMS to provide security services on USMS's behalf in the Second Judicial Circuit, including

in the Southern and Eastern Districts of New York.  Compl., ¶¶ 1, 17.

At all relevant times, Centerra has employed the Individual Plaintiffs as Lead

CSOs.  Leads are non-supervisory employees within USCSO's bargaining unit who have special

responsibilities, including ensuring that all security posts within the courthouses and other

buildings are covered as directed by USMS and acting as liaisons between USMS and Centerra's

District Supervisors.  Centerra selects which CSOs will work as Leads.  Leads receive a higher

rate of pay for their services than ordinary CSOs.  Compl., ¶ 18.

The CARES Act Funds

Congress passed the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) in

March 2020.  In relevant part, Section 3610 of the CARES Act made federal funds available to

agencies, including the USMS, to compensate their contractors' employees for lost work hours

due to Covid-19-related lockdowns and other work interruptions for the period between March 29, 2020 and September 30, 2020.  These funds were intended to keep contractors "in a ready state."  CARES Act § 3610, 134 Stat. at 414.

Between March 29, 2020 and September 30, 2020, as a result of the Covid-19 national emergency, USMS reduced and modified work hours at the courthouses where the Individual Plaintiffs worked.  As a result, CSOs and Leads, including the Individual Plaintiffs, lost wages and/or used accrued paid time off in order to lessen the effects of the reduced work hours on their income.  Compl., ¶ 19.

In May 2020, Centerra distributed to the CSOs and Leads a one-page form entitled "Employee CARES Act Benefit Certification."  The Certification advised employees that Centerra was in the process of seeking reimbursement under the CARES Act for lost wages and accrued leave of up to 40 hours per week during the Covid-19 national emergency, and asked that employees certify whether they had applied for or received federal or state benefits or compensation in lieu of their wages during the Covid-19 national emergency.  The Individual Plaintiffs all signed the Certification indicating that they had not applied for or received federal or state benefits or compensation in lieu of their wages during the Covid-19 national emergency and returned the paperwork to Centerra.  Compl., ¶¶ 20-21.

Centerra Announces USMS Has Approved CARES Act Funds

On January 18, 2021, Centerra announced to the CSOs and Leads that it had secured approval from USMS to pay employees with CARES Act funds for some of their lost hours in the March 29, 2020 through July 31, 2020 time period.  Centerra explained that each individual employee's eligibility for the CARES Act reimbursement was at the sole discretion of USMS.  Specifically, Centerra explained: "We do not have any control of how each government agency interprets the application of CARES Act, the dates of eligibility, or how much funding

4

will be made available."  In the same January 18, 2021 communication, Centerra explained: "It is important to remember that funding for these hours is wholly at the discretion of each government agency is only able to reimburse up to a set number of agreed upon hours[,]" and that "strict conditions to those payments apply, to include but not limited to" certain circumstances.  Centerra warned: "While we have captured all hours impacted, employees should realize not all hours identified met the USMS interpretation of CARES Act criteria for reimbursement."  Around the same time that it issued the January 18, 2021 communication, Centerra distributed to CSOs (but not to the Leads) CARES Act monies.  Compl., ¶¶ 22-25.

USCSO's FOIA Request

After USCSO became aware of the situation, it sought information from USMS and Centerra as to the conditions governing the distribution of the monies and reimbursement for lost wages and accrued time off.  On March 8, 2021, USCSO through its attorney sent USMS a written request for "any guidance or instructions given to the contractors in connection with how they should allocate funds, including but not limited to the circumstances under which CSOs are eligible for reimbursement and the applicable time period(s) covered by the disbursements."  On March 24, 2021, USMS responded that the requested information could be obtained through the FOIA process.  Compl., ¶¶ 26-28.

On April 13, 2021, USCSO through its attorney sent a FOIA request to USMS seeking: "Guidance or instructions given to USMS contractors who employ Court Security Officers (CSOs) with respect to how they should allocate CARES Act funds, including but not limited to the circumstances under which CSOs are eligible for reimbursement, the applicable time period(s) covered by the disbursements, and any appeals process for a CSOs who believes he was entitled to funds but did not receive them."  USMS acknowledged the request but advised that its processing could be "significantly delayed."  Compl., ¶¶ 29-30.

On June 23, 2021, USCSO through its attorney sent an information request to Centerra seeking: "Any guidance or instructions given by the United States Marshals Service to the Contractor concerning how Centerra Group LLC should allocate CARES Act funds to CSOs, including but not limited to circumstances under which CSOs are eligible for reimbursement and the applicable time period(s) covered by the disbursements." Centerra acknowledged the request but refused to provide the requested information, claiming that the voluntary distribution of CARES Act funds was not a term and condition of employment governed by the collective bargaining agreement between it and USCSO, and that its communications with USMS were confidential and proprietary. Compl., ¶¶ 31-32.

Upon information and belief, later in the spring of 2021, USMS made available to Centerra CARES Act monies for the August 1, 2020 through September 30, 2020 time period. Centerra then distributed reimbursement for lost wages and accrued leave to CSOs, but not to any of the Leads. To date, none of the Individual Plaintiffs have received CARES Act monies for their lost wages or accrued time off during the March 29, 2020 through September 30, 2020 time period. Compl., ¶¶ 34-35.

<u>USCSO and the Individual Plaintiffs File Suit</u>

On February 18, 2022, having received no response from USMS to the FOIA request, USCSO and the Individual Plaintiffs initiated this lawsuit. They asserted two causes of action against USMS, one challenging USMS's decision not to allocate CARES Act monies to Leads as arbitrary and capricious in violation of the APA, 5 U.S.C. § 706, and one challenging the USMS's failure to timely provide the requested information in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i). On October 14, 2022, following USMS's August 1 and August 30, 2022 provision of documents in response to USCSO's FOIA Request, Plaintiffs stipulated to the dismissal of their FOIA claim. USMS now moves to dismiss the APA claim.

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether a complaint states a claim, a court ordinarily accepts as true all allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 337 (2d Cir. 2011).

Where, as here, a party challenges subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff "need only make a prima facie showing of jurisdiction" and in reviewing the motion, jurisdictional allegations are construed "liberally" and uncontroverted factual allegations are accepted as true. *Robin v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *see also IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993). Because USMS has moved based on affidavits and evidence outside of the pleadings, limited discovery would be mandated before any court decision to accept a defense predicated on those affidavits and evidence. *See Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 597 (2d Cir. 1988) (holding that district court abused its discretion in denying plaintiffs discovery and a hearing on jurisdictional issues before granting motion to dismiss); *Kamen v. Am. Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). As the Second Circuit held in *American Insurers*, "[b]efore dismissing a case for want of jurisdiction, a court should permit the party seeking the court's intervention to engage in discovery of facts supporting

jurisdiction[,]" and that "[f]ailure to allow such discovery has been held to be an abuse of discretion."  854 F.2d at 597.

## I.     PLAINTIFFS HAVE ADEQUATELY PLEADED FINAL AGENCY ACTION

Agency decisions are only reviewable under the APA if they represent the agency's final word on the matter.  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  To be final, the decision must mark the end of "the agency's decisionmaking process," must not be "tentative or interlocutory," and "rights or obligations" or "legal consequences" must flow from it.  *Id.*  USMS's distribution of CARES Act funding to Centerra clearly meets these criteria.  Accordingly, Plaintiffs have sufficient pleaded final agency action reviewable under the APA.

As the FOIA documents show, USMS's CARES Act distribution marked the end of a lengthy review process--USMS sent detailed guidance to its contractors explaining how they should apply for reimbursement and what USMS would and would not reimburse; USMS then presumably corresponded with Centerra regarding its partial acceptance and partial denial of Centerra's applications; and USMS then allocated money to Centerra in accordance with its ultimate decision.[1]  USMS cannot seriously argue that its distribution of federal funds is a 'tentative or interlocutory' decision, or that 'legal consequences' do not flow from it.  The distribution of money is a patently final action--the recipient knows exactly what the government is giving, and money once distributed is typically not returned--ripe for judicial review.  *See, e.g.*, *Confederated Tribes of the Chehalis Reservation v. Mnuchin*, 976 F.3d 15, 20-21 (D.C. Cir. 2020), *rev'd on other grounds by Yellen v. Confederated Tribes of the Chehalis Reservation*, 141

---

[1] The FOIA documents only provided USMS's final decision letters regarding Centerra's CARES Act applications for the Southern and Eastern Districts of New York.  The FOIA documents did not include Centerra's application materials or any interim correspondence.

S. Ct. 2434 (2021) ("Nothing in the CARES Act expressly precludes review of spending decisions…")[2]; *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 677-79 (N.D. Cal. 2020) (holding that the IRS's decision not to distribute CARES Act stimulus payments to incarcerated individuals is final agency action).

        In fact, at least seven courts from six jurisdictions, including the Supreme Court, have held that agencies' decisions regarding CARES Act money distributions are reviewable under the APA, and that individual plaintiffs denied monetary distributions to which they were arguably entitled under the CARES Act have standing to bring APA suits.  *See Confederated Tribes*, 976 F.3d at 20-21 (Treasury's definition of "Native American tribe" for the purposes of CARES Act funding distribution is reviewable under the APA; plaintiffs have standing to challenge Treasury's definition); *Scholl*, 494 F. Supp. 3d at 674-79 (plaintiffs have standing to bring APA suit against Treasury challenging its decision not to issue CARES Act stimulus checks to incarcerated individuals; IRS's decision not to issue checks constituted final agency action); *Doe v. Trump*, No. 20-cv-2531, 2020 WL 7337818, at *2 (N.D. Ill. Dec. 14, 2020) (plaintiffs have standing to bring APA suit challenging Treasury's decision not to issue CARES Act stimulus checks to qualified spouses of undocumented individuals); *Oakley v. Devos*, No.20-cv-03215-YGR, 2020 WL 3268661, at *5-6 (N.D. Cal. June 17, 2020), *aff'd* No. 20-16564, 2021 WL 3624854 (9th Cir. May 20, 2021) (plaintiffs have standing to bring APA suit challenging DOE's decision not to make CARES Act financial aid funds available to DACA recipients; DOE's decision constitutes final agency action); *Washington v. Devos*, 466 F. Supp. 3d 1151,

---

[2] The DC Circuit opinion includes a lengthy discussion of why plaintiffs have standing to bring an APA suit over the distribution of CARES Act funds.  The Supreme Court opinion does not discuss standing and jumps directly to the merits, implicitly endorsing the DC Circuit's standing analysis.

1162-64 (E.D. Wash. 2020) (same as *Oakley*; rejecting DOE's argument that plaintiffs' injury is not fairly traceable to DOE's decision); *Defy Ventures, Inc. v. U.S. Small Business Admin.*, 469 F. Supp. 3d 459, 469-71 (D. Md. 2020), *dismissed as moot by Carmen's Corner Store v. Small Business Admin.*, 520 F. Supp. 3d 726 (D. Md. 2021) (plaintiffs have standing to bring APA suit challenging SBA's decision not to make CARES Act PPP loans available to small businesses whose owners have criminal records); *In re Vestavia Hills, Ltd.*, 630 B.R. 816 (S.D. Cal. 2021) (plaintiffs have standing to bring APA suit challenging SBA's decision not to make CARES Act PPP loans available to small businesses in bankruptcy).

Thus, it is well-settled that individual plaintiffs have standing to bring APA suits against agencies over CARES Act monies the plaintiffs claim they are entitled to but did not receive.  CARES Act money distributions are final agency actions, and Plaintiffs have found no case holding to the contrary.  In its brief, USMS attempts to distract from this clear precedent by citing cases concerning agency actions far removed from the simple distribution of federal funds--for example, a case concerning the designation of land as territorial "waters of the United States" and a case concerning the appropriate uses for public lands.  *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593-94 (9th Cir. 2008) (agency's designation of territorial "waters of the United States" not final agency action because it did not determine the permissible uses for a particular plot of land) (cited in Defendant's Memorandum of Law in Support of Its Motion To Dismiss ("USMS Br.") (Docket No. 26 at 8-9); *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1135-37 (9th Cir. 1998) (agency's interim use of public lands was not final agency action because a final land use plan was in the works and because there was no evidence that the agency had affirmatively implemented an interim use plan) (cited in USMS Br. at 8).

In sum, Plaintiffs here have alleged that USMS instructed Centerra to distribute CARES Act funding to its CSOs but not to its Leads.  This is final agency action subject to APA review.  It is a decision by USMS, it is not interlocutory or conditional, and Plaintiffs' ultimate legal right--in this case the right to payment--is not conditional upon some contingency somewhere down the line.  As the Northern District of California noted in *Scholl*, "the decision to deny [CARES Act stimulus payments] to a specific segment of the population is one where a right has been determined," and thus the decision constitutes final agency action.  494 F. Supp. 3d at 679.

## II.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE APA CLAIM

In its motion to dismiss, USMS argues that the Court lack subject matter jurisdiction over the APA claim, claiming that (1) the actions of a third party, Centerra, were the proximate cause of Plaintiffs' injury; (2) USCSO lacks associational standing to sue on behalf of the Individual Plaintiffs; and (3) Plaintiffs cannot seek money damages in an APA suit.  As shown below, these arguments should be rejected.

### A.   USMS's Standing Arguments Turn on a Factual Conclusion that the Court Cannot Make at this Time

USMS's argument that third-party Centerra caused Plaintiffs' injuries turns entirely on a factual assumption unsupported by the record: that Centerra, not USMS, made the decision to distribute CARES Act funds to CSOs but not Leads in the Southern and Eastern Districts of New York.  Plaintiffs have clearly pleaded that USMS instructed Centerra to reimburse CSOs but not Leads.  USMS attempts to counter this clear pleading with its repeated but unsubstantiated argument that the documents it produced in response to USCSO's FOIA request demonstrate unambiguously that Centerra made the decision to distribute the CARES Act money to CSOs but not Lead CSOs.  *See* USMS Br. at 5; Declaration of Angelica Spriggs

11

dated November 7, 2022 ("Spriggs Decl.") (Docket No. 28) ¶¶ 8-10; Declaration of Charlotte
Luckstone dated November 4, 2022 ("Luckstone Decl.") (Docket No. 27) ¶ 6.

       As a preliminary matter, under the Court's Individual Rule of Practice II.E.1,
USMS cannot, through the vehicle of the Spriggs and Luckstone declarations, introduce facts not
set forth in the Complaint.  In particular, Spriggs' assertion that "[a]t no time did USMS direct
Centerra in any way as to how to allocate the CARES Act funding it received among its Court
Security Officers and its Lead Court Security Officers," *see* Spriggs Decl., ¶ 10, is inappropriate
and should not be considered.

       But even if USMS's declarations were considered, they do not support dismissal
of Plaintiffs' APA claim.  The heavily redacted FOIA documents that USMS produced on
August 1 and 30, 2022 indicate that USMS had the final say on whether and in what amounts it
would approve CARES Act funding for contractors, including Centerra, to reimburse their
employees.  *See* Spriggs Decl., Exs. A and B.  Indeed, both guidance documents state that USMS
would evaluate each contractor's request for reimbursement on a case-by-case basis, and that not
all requests for reimbursement would be granted.  But it is impossible to discern what, if
anything, the documents say about who decided to distribute CARES Act funds to CSOs but not
Leads in the Southern and Eastern Districts of New York.  Thus, USMS's assertion that "[t]he
face of the records indicate that the USMS did not direct Centerra to allocate CARES Act
funding among its employees in a certain manner," *see* Luckstone Decl., ¶ 6, is baffling.

       And in any case, it is clear what the FOIA documents *do not* say: despite USMS's
repeated assertions to the contrary, the documents do not state or imply that Centerra decided
how to distribute the CARES Act funds provided by USMS.  Nor do they support USMS's
contention that it "never made any decision to direct Centerra."  USMS Br. at 5.

Finally, it is simply untrue for USMS to claim that Plaintiffs allege that it was Centerra's decision to allocate the CARES Act funding to CSOs at the exclusion of the Leads. USMS Br. at 10-11.  To the contrary, Plaintiffs have repeatedly and clearly alleged that USMS made that decision.  As alleged in the Complaint: "Centerra explained that each individual employee's eligibility for the CARES Act reimbursement was at the sole discretion of USMS." Compl., ¶ 22.  Specifically, Centerra explained that it did not "have control of how each government agency interprets the application of CARES Act, the dates of eligibility, or how much funding will be made available."  *Id*.  Centerra explained that "funding for those hours is wholly at the discretion of each government agency," and that "[s]trict conditions to those payments apply, to include *but not limited to* [certain conditions]."  *Id*., ¶ 23 (emphasis added). Centerra cautioned that while it had "captured all hours impacted, employees should realize not all hours identified met the USMS interpretation of CARES Act criteria for reimbursement."  *Id.*, ¶ 24.  In considering USMS's motion to dismiss, the Court must accept these allegations as true and construe them in the light most favorable to Plaintiffs.

### B.  Plaintiffs Have Adequately Pleaded Causation

Standing requires some causal connection between a defendant's action and a plaintiff's injury.  *See, e.g.*, *New York v. Scalia*, 464 F. Supp. 3d 528, 543 (S.D.N.Y. 2020) ("The length of the causal chain between [Defendant's action] and the [Plaintiff]'s alleged injury does not defeat Plaintiffs' traceability argument... '[W]hat matters is not the length of the chain of causation, but rather the plausibility of the links that comprise the chain.'") (*quoting Mendia v. Garcia*, 768 F.3d 1009, 1012-13 (9th Cir. 2014)).  Here, Plaintiffs have clearly pleaded that USMS caused their injuries, and therefore Plaintiffs have met their burden of alleging causation, no matter the length of the causal chain.

Plaintiffs have pleaded that USMS directed Centerra to distribute CARES Act funding to CSOs but not Leads in the Southern and Eastern Districts of New York.  When a plaintiff alleges that a federal agency has directed a private intermediary to take a certain action towards an individual plaintiff, there is a sufficient causal chain to establish standing.  *See De La Mota v. U.S. Dep't of Educ.*, No. 02 Civ. 4276 (LAP), 2003 WL 21919774, at *6-9 (S.D.N.Y. Aug. 3, 2003) (students have standing to bring APA suit against the DOE after their private law school denied their public service loan forgiveness applications; court held that though the law school determined loan forgiveness eligibility, it did so in accordance with DOE guidelines; as a result, plaintiffs could bring suit against the DOE directly); *see also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565-66 (2019) (holding that states have standing to challenge the Commerce Department's plan to add a citizenship question to the census, as states' potential injury--non-citizens would be discouraged from filling out the census, leading to an undercount of the states' populations and a concomitant loss of federal funding--was fairly traceable to the Commerce Department's planned action, even though it depended upon the actions of third parties (i.e. individual census respondents)).  Just as in *De La Mota*, the agency here directed its action through a private third-party intermediary, in this case Centerra.  But the presence of a third party does not break the chain of causation, since Plaintiffs have clearly pleaded that USMS, not Centerra, determined how the funds would be distributed.

The cases USMS cites in support of its argument are inapposite.  Both *Raum v. Town of Mount Pleasant*, No. 09 Civ. 5431 (SCR), 2010 WL 11712763 (S.D.N.Y. Jan. 6, 2010) (cited in USMS Br. at 11) and *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (cited in USMS Br. at 11) are cases where *no one disputes* which party was the direct cause of plaintiffs' injury.  In *Raum*, plaintiffs alleged that defendant town had levied code violations against their home in

14

order to scuttle their planned sale of the home to a third party, but no one disputed that the potential buyer, and not the town, backed out of the sale.  In *Rendell-Baker*, plaintiffs argued that their terminations constituted state action because their private school employer operated mostly on public funds.  But again, no one disputed that the private school itself, not the state, ordered the terminations.

Unlike the cases relied on by USMS, in this case the factual question of who directed the payment of CARES Act funds to CSOs but not Leads is very much in dispute. Plaintiffs have clearly pleaded that USMS directed third-party Centerra to make payments to CSOs but not to Leads, and that USMS was therefore the direct cause of their injuries.

### C.    There Is No Reason for the Court to Consider USCSO's Standing

Under the one-plaintiff rule, courts need only establish that *one* named plaintiff has standing to proceed to the merits of the case.  Every named plaintiff to a suit need not establish an independent basis for standing.  The Supreme Court has consistently and repeatedly endorsed the one-plaintiff rule.  *See, e.g. Horne v. Flores*, 557 U.S. 433, 446 (2009) ("Because the superintendent clearly has standing to challenge the lower courts' decisions, we need not consider whether the Legislators also have standing to do so."); *Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998) ("Because both the City of New York and the health care appellees have standing, we need not consider whether the appellee unions also have standing to sue."); *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264 and n.9 (1977) ("[W]e have at least one individual plaintiff who has demonstrated standing… Because of the presence of this plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit.")

USMS argues that USCSO does not have associational standing to sue on behalf of its members.  However, because the Individual Plaintiffs--all USCSO members employed by

Centerra as Leads in the Southern and Eastern Districts of New York--have standing to sue on their own behalf, the Court need not consider whether USCSO has standing.[3]

> ### D.    Plaintiffs Seek Equitable Relief, Not Money Damages

Plaintiffs seek equitable relief from the Court.  Specifically, Plaintiffs seek and decision and order "ordering USMS to make the Individual Plaintiffs' whole for their lost wages and/or loss of accrued paid time off."  Compl. (Prayer for Relief) ¶ 3.  USMS erroneously argues that Plaintiffs are seeking "money damages," which are not available in APA suits.  5 U.S.C. § 702.  But equitable relief that happens to include the payment of money is not the same as "money damages" prohibited under the APA.  *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("Our cases have long recognized the distinction between an action at law for damages— which are intended to provide a victim with monetary compensation… and an equitable action for specific relief—which may include… 'the recovery of specific property or monies'…  The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'") (internal citations omitted).

In *Bowen*, the Supreme Court declined to dismiss an APA suit brought by a state against the Department of Health and Human Services ("HHS") after HHS refused to reimburse the state for Medicaid expenses.  487 U.S. 879.  HHS argued that the state's requested relief, reimbursement, was "money damages" unavailable in an APA suit.  *Id.* at 891.  The Supreme Court disagreed, holding that the state simply sought to force HHS to comply with the law, which in this case required the transfer of money.  *Id.* at 900.  The state did not seek "money

---

[3] Moreover, the Supreme Court has held that the third factor of the *Hunt* test, the factor USMS considers fatal to USCSO's bid for standing, is merely a prudential consideration that need not apply when labor unions sue on behalf of their members.  *See UFCW Local 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996) (labor union has associational standing to sue an employer for WARN Act claims on its members' behalf).

16

damages," which the Court defined as "compensation for the damage sustained by the failure of the Federal Government to pay as mandated." *Id.*.

Following *Bowen*, courts have consistently held that APA suits to force an agency to comply with the law are not suits for 'money damages' simply because the remedy involves money changing hands. *See, e.g.*, *Linea Area Nacional de Chile S.A. v. Meissner*, 65 F.3d 1034, 1042-43 (2d Cir. 1995) (airline has standing to bring APA suit against Immigration and Naturalization Service ("INS") seeking reimbursement for passenger expenses INS unlawfully forced the airline to pay; court concludes that suit for reimbursement is not one for 'money damages'); *Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 478-79 (2d Cir. 1995) (insurance company has standing to bring APA suit against the federal government to enforce its common law subrogation rights and seek reimbursement for insurance proceeds paid out to the government, suit is not one for 'money damages'). Moreover, as discussed above, courts have consistently allowed APA suits that seek to force agencies to distribute CARES Act funds in certain ways to go forward. *See Amador v. Mnuchin*, 476 F. Supp. 3d 125, 142 (D. Md. 2020) (plaintiffs' pursuit of an injunction in an APA suit barring Treasury from denying CARES Act stimulus checks to individuals with undocumented spouses is not a suit for money damages).

Unlike the cases cited by USMS, Plaintiffs here do not seek back pay or other tort damages that may qualify as 'money damages.' *See Hubbard v. Administrator, EPA*, 982 F.2d 531 (D.C. Cir. 1992) (APA suit cannot give plaintiff back pay as damages in an illegal refusal to hire case) (cited in USMS Br. at 14); *Ward v. Brown*, 22 F.3d 516 (2d Cir. 1994) (there cannot be back pay in an APA suit involving an unlawful termination) (cited in USMS Br. at 14); *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410 (5th Cir. 2013) (there cannot be tort damages in APA suit involving an erroneous denial of veterans' benefits) (cited in USMS Br. at 14).

Plaintiffs here seek affirmative injunctive relief to force USMS to comply with its duties under the CARES Act.  This relief happens to involve money; it does not involve 'money damages.'

  E.  **Agency Decisions Regarding CARES Act Funding**
     **Are Reviewable Under the APA**

      USMS argues that the Court lacks subject matter jurisdiction because Plaintiffs cannot point to a specific, statutorily required action that USMS failed to take.  This argument-- that Plaintiffs cannot establish subject matter jurisdiction unless the Complaint *proves* Plaintiffs' APA suit on the merits--puts the cart before the horse.  The case law does not support this argument, and Plaintiffs have more than sufficiently pleaded their entitlement to affirmative injunctive relief.

      First, USMS mischaracterizes the Complaint when it claims that Plaintiffs failed to "point to any provision of the CARES Act that 'required' USMS" to allocate CARES Act funding to Lead CSOs.  USMS Br. at 15.  The Complaint alleges that the purpose of the CARES Act funding provided to Centerra by USMS was "to compensate CSOs for their lost hours and accrued leave."  Compl. ¶ 2.  Section 3610 of the CARES Act states that "funds made available to an agency by this Act… may be used by such agency to… to reimburse… paid leave, including sick leave, a contractor provides to keep its employees or subcontractors in a ready state…" CARES Act § 3610, 314 Stat. at 414.  And USMS stated in a memorandum to its contractors that Congress gave the agency CARES Act funding "to reimburse costs of paid leave to federal contractors and subcontractors to support COVID-19 response…"  Spriggs Decl., Ex. A at 2.  Despite USMS's bald assertion to the contrary, Plaintiffs have clearly pleaded that Section 3610 of the CARES Act requires USMS to recompense CSOs and Leads for work hours lost due to the Covid-19 pandemic, and USMS's own guidance documents support this interpretation.  Thus, Plaintiffs have identified a "discrete agency action"--payment of CARES

18

Act funds to Leads--that USMS was "required to take" by law.  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  That is plainly enough for subject matter jurisdiction.

Second, in support of its argument that Plaintiffs have failed to plead a discrete, statutorily required action, USMS relies on cases where plaintiffs attempt to use the APA to launch "broad programmatic attack[s]" on agency policy.  *Id.*  In *Norton*, plaintiffs brought an APA suit alleging that the Bureau of Land Management ("BLM") failed to implement and abide by proper land use plans for certain wilderness areas.  In holding that it did not have subject matter jurisdiction, the Court seized on the broad discretion Congress granted the BLM in the design and implementation of land use plans.  *Id.* at 66, 71 (cited in USMS Br. at 15).  That the BLM did not implement and abide by the land use policy plaintiffs preferred was an "abstract policy disagreement" unsuited for judicial review.  *Id.* at 66.  Similarly, in *Benzman v. Whitman*, plaintiffs brought an APA suit to force the EPA to implement comprehensive air quality testing and medical monitoring programs for swaths of New York City following the September 11 attacks.  523 F.3d 119, 130 (2d Cir. 2008) (cited in USMS Br. at 15).  Again citing the broad discretion Congress granted the EPA in the design and implementation of disaster response plans, the Court declined to rewrite the EPA's plan of action in favor of the plaintiffs' preferences.  *Id.* at 132.

Plaintiffs here are not asking USMS to reimagine its approach to courthouse security, and Plaintiffs are not launching a 'broad programmatic attack' on USMS's policies.  Rather, Plaintiffs are asking USMS to make discrete funds available to a discrete set of workers, pursuant to a statutory mandate.  As described above, courts have consistently held that agencies' decisions regarding CARES Act funding distribution are reviewable under the APA.  This case is no different.

19

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss should be denied.

Dated: December 5, 2022
      New York, New York

                                    Respectfully submitted,

                                    */s/ Kate M. Swearengen*
                                    Kate M. Swearengen
                                    Matthew E. Stolz
                                    COHEN, WEISS and SIMON LLP
                                    900 Third Avenue, Suite 2110
                                    New York, New York 10022
                                    Telephone: (212) 563-4100
                                    Facsimile: (212) 695-5436

                                    *Counsel for Plaintiffs*

20