UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES COURT SECURITY OFFICERS, ALEJANDRO ACEVEDO, FRANK FORSTER, ANTHONY GATTO, BRIAN GILLESPIE, TIMOTHY HERTEL, CEPHAS HUNTER, THOMAS KAUFER, MARTA B. RIVERA, ROBERT RUGGIERO and ANTHONY VENTURELLA,<br><br>      Plaintiffs,<br><br>      -v-<br><br>UNITED STATES MARSHALS SERVICE,<br><br>      Defendant. | 22 Civ. 1380 (VM) |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2721
E-mail: tomoko.onozawa@usdoj.gov

TOMOKO ONOZAWA
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................1

I. THE COURT SHOULD DISMISS PLAINTIFFS' APA CLAIM FOR FAILURE
   TO STATE A CLAIM ......................................................................................................1

II. THIS COURT SHOULD DISMISS PLAINTIFFS' APA CLAIM BECAUSE IT
    LACKS SUBJECT MATTER JURISDICTION ...............................................................3

   A. Plaintiffs Lack Article III Standing Under the APA Because USMS Did
      Not Take Any Final Action That Caused Plaintiffs' Alleged Injuries .....................3

   B. The Individual Plaintiffs Are Not Entitled to Injunctive Relief in the Form
      of Monetary Payments Because They Have Failed to Assert a Mandatory
      Duty .........................................................................................................................5

CONCLUSION ................................................................................................................................7

Defendant United States Marshals Service ("USMS" or the "Government") respectfully submits this reply memorandum of law in further support of its partial motion to dismiss Plaintiffs' claim under the Administrative Procedure Act ("APA"), as asserted in Count I of their complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

**I.    THE COURT SHOULD DISMISS PLAINTIFFS' APA CLAIM FOR FAILURE TO STATE A CLAIM**

Plaintiffs allege, and USMS agrees, that the agency granted its contractor Centerra Group LLC's ("Centerra") request for reimbursement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116–136, 134 Stat. 281 (2020).  *See* Pls.' Mem. Of Law in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp. Br.") at 8 [ECF No. 29].  *See also* Declaration of Angela Spriggs, dated Nov. 6, 2022 ("Spriggs Decl."), ¶¶ 8, 9 & Exs. C & D [ECF No. 28].  However, Plaintiffs' APA claim against USMS fails because they have not alleged that USMS made a second final agency decision that *also* ordered Centerra to distribute its CARES Act reimbursements to Court Security Officers ("CSOs") but not to Lead Court Security Officers ("Lead CSOs").  Nothing in Plaintiffs' complaint alleges that USMS decided to exclude Lead CSOs after "the consummation of the agency's decisionmaking process," or even that there was a "decisionmaking process" where the agency had "a full opportunity to consider and correct its own mistakes."  *Runaway Dev. Grp. v. Pentagen Tech. Int'l, Ltd.*, 396 F. Supp. 2d 471, 474 (S.D.N.Y. 2005) (citations omitted).

At most, Plaintiffs' APA claim rests on an undisclosed document that Centerra allegedly created and distributed to its employees, which allegedly informed its employees that "[w]e do not have any control of how each government agency interprets the application of [the] CARES Act, the dates of eligibility, or how much funding will be made available."  Compl. ¶ 22.  Other

than speculating that the agency's discretion must have included—among an unspecified universe of other decisions—a specific decision to exclude Centerra's Lead CSOs from receiving CARES Act reimbursements, this allegation alone hardly "raise[s] a right to relief above the speculative level." *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 248 (S.D.N.Y. 2009) (citations omitted).

Plaintiffs also claim that they have adequately pleaded an APA claim against USMS because "at least seven courts from six jurisdictions . . . have held that agencies' decisions regarding CARES Act money distributions are reviewable under the APA," but this misses the point. If Plaintiffs had alleged (and USMS had conceded) that the agency had made a final agency decision to exclude Centerra's Lead CSOs from receiving any of Centerra's CARES Act reimbursements, that decision would be reviewable under Section 706 of the APA. 5 U.S.C. § 706. But Plaintiffs have not done so. By contrast, in most of the APA cases Plaintiffs cite, the existence of an agency decision was never in question, and the courts went on to consider whether the agency decision at issue was judicially reviewable under the APA. *See* Pls.' Opp. Br. at 9–10. *See Confederated Tribes of the Chehalis Reservation v. Mnuchin*, 976 F.3d 15, 20–21 (D.C. Cir. 2020), *rev'd on other grounds by Yellen v. Confederated Tribes of the Chehalis Reservation*, 141 S. Ct. 2434 (2021) (agency decision to deem Alaska Native Village Corporations as "Tribal governments" within the meaning of the CARES Act was subject to judicial review under the APA); *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 678–79 (N.D. Cal. 2020) (agency decision to withhold economic impact payments under the CARES Act to incarcerated persons was a final agency action subject to judicial review under the APA); *Oakley v. DeVos*, Case No. 20-cv-3215, 2020 WL 3268661, at *5 (N.D. Cal. June 17, 2020), *appeal dismissed per stipulation*, No. 20-16564, 2021 WL 3624854 (9th Cir. May 20, 2021) (agency's

interim final rule interpreting CARES Act provision was a final agency action subject to judicial review under the APA); *Washington v. DeVos*, 466 F. Supp. 3d 1151, 1162–63 (E.D. Wash. 2020) (agency's interim final rule interpreting CARES Act provision was a final agency action subject to judicial review under the APA).

The remainder of Plaintiffs' cases are not on point at all. *See* Pls.' Opp. Br. at 9–10. *Doe v. Trump* merely holds that federal agencies, not individual defendants, are proper defendants in an APA lawsuit. Case No. 20-cv-2531, 2020 WL 7337818, at *2–3 (N.D. Ill. Dec. 14, 2020). *Defy Ventures, Inc. v. SBA* was a decision on a preliminary injunction motion that considered the plaintiff's likelihood of success on the merits of its claim that an agency's interim final rules interpreting the CARES Act violated the APA. 469 F. Supp. 3d 459, 471–77 (D. Md. 2020), *dismissed as moot by Carmen's Corner Store v. SBA*, 520 F. Supp. 3d 725 (D. Md. 2021). Similarly, the district court in *In re Vestavia Hills, Ltd.* vacated a bankruptcy court's preliminary injunction against the Small Business Administration and held that the debtor was unlikely to succeed on its APA challenge to the agency's regulations implementing the CARES Act. 630 B.R. 816, 835–48 (S.D. Cal. 2021). Unlike these cases, Plaintiffs have failed to allege that USMS made *any* discrete final agency action to compel Centerra to limit its CARES Act reimbursements to CSOs only, and there is no basis (or even an administrative record) for the Court to consider whether that unalleged final agency action was arbitrary and capricious under the APA.

## II. THIS COURT SHOULD DISMISS PLAINTIFFS' APA CLAIM BECAUSE IT LACKS SUBJECT MATTER JURISDICTION

### A. Plaintiffs Lack Article III Standing Under the APA Because USMS Did Not Take Any Final Action That Caused Plaintiffs' Alleged Injuries

Plaintiffs have not and cannot establish Article III standing because there is no action which USMS took that is fairly traceable to their alleged economic injuries. *See* Spriggs Decl.

¶¶ 8–10 & Exs. A–D; Declaration of Charlotte Luckstone, dated Nov. 4, 2022 ("Luckstone Decl."), ¶¶ 5–6 & Ex. B [ECF No. 27]. This Court may consider the agency's declarations and the exhibits appended thereto to determine whether subject matter jurisdiction exists. *See Harrison v. Potter*, 323 F. Supp. 2d 593, 598 (S.D.N.Y. 2004) ("In reviewing a dismissal under Rule 12(b)(1), a court may consider materials beyond the pleadings, including affidavits, exhibits, and discovery materials, to determine if subject matter jurisdiction exists.").

Here, the USMS contracting officer responsible for the agency's CSO contractors during the relevant time period has provided a sworn declaration under oath stating the agency never "direct[ed] Centerra in anyway as to how to allocate the CARES Act funding it received among its Court Security Officers and its Lead Court Security Officers." Spriggs Decl. ¶ 10. Plaintiffs sent a FOIA request to USMS in an effort to obtain "information from USMS . . . as to conditions governing the distribution of the monies and reimbursement for lost wages and accrued time off," Pls.' Opp. Br. at 5, and received 59 pages of responsive records with limited redactions pertaining only to the hours worked by certain contractors, contractor rates specific to Centerra, and the names and other personal identifying information of USMS and Centerra employees. Luckstone Decl. ¶ 5 & Ex. B. Though Plaintiffs complain that it is "impossible to discern what, if anything, the documents say about who decided to distribute CARES Act funds to CSOs but not Leads in the Southern and Eastern Districts of New York," Pls.' Opp. Br. at 10, the portions of the records that were not redacted for hours worked, contractor rates, and employee names show that USMS never directed Centerra to exclude Lead CSOs from receiving CARES Act reimbursements. *Id.* Ex. B.[1]

---

[1] Plaintiffs assert that the FOIA documents produced in this case "did not include Centerra's application materials or any interim correspondence." Pls.' Opp. Br. at 8 n.1. As the agency's FOIA declarant explained, plaintiff USCSO's FOIA request to the agency only sought

4

### B. The Individual Plaintiffs Are Not Entitled to Injunctive Relief in the Form of Monetary Payments Because They Have Failed to Assert a Mandatory Duty

This Court also lacks subject matter jurisdiction to consider the Individual Plaintiffs' APA claim, despite their contention that they are "asking USMS to make discrete funds available to a discrete set of workers, pursuant to a statutory mandate." Pls.' Opp. Br. at 19. The fundamental problem, however, is that Plaintiffs have not and cannot identify any statutory mandate that compels such equitable relief under the APA.

As the Supreme Court held in *Bowen v. Massachusetts*, 487 U.S. 879, 912 (1988), *see* Pls.' Opp. Br. at 16, Section 706(1) of the APA grants a reviewing court the authority to grant equitable relief to an aggrieved plaintiff affected by agency action. 5 U.S.C. § 706(1). To be entitled to affirmative injunctive relief in the form of the payment of money under Section 706(1), Plaintiffs must show that USMS "failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). However, Plaintiffs have not, and cannot, point to any provision in the CARES Act or other statute or regulation that "required" USMS to ensure that any CARES Act reimbursements provided to a private contractor would be allocated to the contractor's Lead CSO employees.

As Plaintiffs concede, Section 3610 of the CARES Act states that "funds made available to an agency by this Act . . . *may be used by such agency* . . . to reimburse . . . paid leave, including sick leave, a contractor provides to keep its employees or subcontractors in a ready

---

"[g]uidance or instructions given to USMS contractors who employ Court Security Officers . . . with respect to how they should allocate CARES Act funds…and any appeal process for a CSO who believes he was entitled to funds but did not receive them." Luckstone Decl. ¶ 3 & Ex. A. As a result, USMS did not process and release non-exempt portions of Centerra's application for reimbursement because it was not responsive to the request "for guidance or instructions given to USMS contractors." Contrary to Plaintiffs' claim, USMS did produce non-exempt portions of "interim correspondence" between USMS and Centerra relating to Centerra's reimbursement requests. *See* Luckstone Decl. Ex. B, at USMS 034–059.

state . . . ." *See* Pls.' Opp. Br. at 18 (quoting CARES Act § 3610, 314 Stat. at 414) (emphasis added). Notably, this provision states that an agency *may* use CARES Act funds to reimburse its contractors, but is not *required* to do so. *See Anglers Conservation Network v. Pritzker*, 70 F. Supp. 3d 427, 440 (D.D.C. 2014) ("Because the word 'may' . . . implies discretion, there is no legally required action imposed") (internal quotation and citation omitted). If an agency does exercise its discretion to grant CARES Act reimbursements to its contractors—as USMS did here—nothing in Section 3610 further mandates that the agency make those funds "available to a discrete set of workers." Pls.' Opp. Br. at 19. Accordingly, the cases Plaintiffs cite, *id.* at 17, are distinguishable because the government had a clearly identified legal duty to take the specific action sought by plaintiffs. *See, e.g., Bowen*, 487 U.S. at 900 (state government's suit against the Department of Health and Human Services was "a suit seeking to enforce the statutory mandate [of the Medicaid Act] itself, which happens to be one for the payment of money"); *Linea Area Nacional de Chile S.A. v. Meissner*, 65 F.3d 1034, 1044 (2d Cir. 1995) (the APA entitled the plaintiff airline to monetary reimbursements from the former Immigration and Naturalization Service for costs associated with the detention of certain passengers, because the "[Immigration and Nationality Act] clearly directs that the Commissioner pay the detention expenses of excludable aliens . . . accordingly [plaintiff] has a statutory entitlement to reimbursement for its improperly incurred expenses"); *Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 478–79 (2d Cir. 1995) (holding that the APA's bar on money damages did not preclude judicial review of plaintiff's APA claim, where plaintiff "seeks injunctive relief to force the government to perform a legal obligation" and "perform its duty"); *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 142 (D. Md. 2020) (holding that APA challenge to IRS withholding of economic impact

payments under CARES Act could proceed, where plaintiffs challenged legality of underlying statute which excluded certain taxpayers from receiving the payments).

In addition, there is no statutory mandate in Section 3610 of the CARES Act for USMS to disburse appropriated funds directly to a contractor's *employees*, such as the Individual Plaintiffs. The statute makes clear that agencies may reimburse *contractors* for certain costs incurred in allowing employees and subcontractors paid leave during the COVID-19 pandemic. CARES Act § 3610, 314 Stat. at 414. Accordingly, even if the Court were to find that USMS made a final agency decision to exclude Centerra's Lead CSOs from receiving any CARES Act reimbursement—which it did not—and that such a decision was arbitrary and capricious in violation of Section 706 of the APA, there is no statutory authority under the CARES Act for the Court to direct USMS to make "payment of CARES Act funds to Leads." Pls.' Opp. Br. at 18–19.

## CONCLUSION

For the foregoing reasons, the Court should grant USMS's motion under Rule 12(b)(1) and Rule 12(b)(6) and dismiss Plaintiffs' APA claim.

Dated: December 19, 2022
      New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   */s/ Tomoko Onozawa*
TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2721
E-mail: tomoko.onozawa@usdoj.gov