```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: 04/03/2023           │
└─────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

UNITED STATES COURT SECURITY OFFICERS,
ALEJANDRO ACEVEDO, FRANK FORSTER,
ANTHONY GATTO, BRIAN GILLESPIE, TIMOTHY
HERTEL, CEPHAS HUNTER, THOMAS KAUFER,
MARTA B. RIVERA, ROBERT RUGGIERO, and
ANTHONY VENTURELLA,

                    Plaintiffs,

              - against -

UNITED STATES MARSHALS SERVICE,

                    Defendant.

─────────────────────────────────

**22 Civ. 1380 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiffs United States Court Security Officers ("USCSO"), Alejandro Acevedo, Frank Forster, Anthony Gatto, Brian Gillespie, Timothy Hertel, Cephas Hunter, Thomas Kaufer, Marta B. Rivera, Robert Ruggiero, and Anthony Venturella (together, but excluding USCSO, the "Individual Plaintiffs" and together with USCSO, the "Plaintiffs") bring this action against Defendant United States Marshals Service ("USMS") alleging violation of the Administrative Procedure Act ("APA"), 5 U.S.C. Section 706. (See "Complaint" or "Compl.," Dkt. No. 1.)

Now before the Court is USMS's partial Motion to Dismiss Count I of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and 12(b)(1) ("Rule 12(b)(1)"). (See "Notice of Mot.," Dkt. No. 25; "Motion," or

"Mot." Dkt. No. 26.) For the reasons stated below, the Motion is **DENIED**.

## I.   BACKGROUND

### A.   FACTUAL BACKGROUND[1]

The Individual Plaintiffs are Lead Court Security Officers ("Lead CSOs") who provide and ensure the security of the federal courts, probation offices, and U.S. Attorney's offices in Manhattan, Brooklyn, and Poughkeepsie, New York. USCSO is the union that supports the Individual Plaintiffs. All of the Individual Plaintiffs are employed under a contract between a company called Centerra, which is not a party to this litigation, and USMS. As Lead CSOs, the Individual Plaintiffs have "special responsibilities" above and beyond their regular CSO counterparts, including managing posts and ensuring coverage as directed by USMS as well as liaising between the USMS and Centerra's District Supervisors. (Compl. ¶ 4.) They also receive a higher rate of pay than regular CSOs.

---

[1] The factual recitation set forth below, except as otherwise noted, derives from the Complaint and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss, as described in more detail in Section II, *infra*. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech Fin. Grp., Inc., 282 F.3d 147, 152 (2d Cir. 2002)). Except where specifically quoted, no further citation will be made to the Complaint or the documents referred to therein.

When New York City became the global epicenter of the COVID-19 pandemic, many of the federal courthouses and U.S. Attorneys offices where the Individual Plaintiffs were employed reduced staffing. During the height of the pandemic, many CSOs, including the Individual Plaintiffs, used their accrued paid time off when they were unable to report to work due to contracting COVID-19 and/or quarantining after coming in close contact with a COVID-19 infected person.

Between March 29, 2020 and September 30, 2020, the USMS reduced or modified work hours for all CSOs, causing the Individual Plaintiffs to lose wages or use accrued paid time off. The Individual Plaintiffs did not apply for federal or state benefits to offset some of these losses.

In May 2020, after Congress passed the Coronavirus Aid, Relief, and Economic Security Act, P.L. No. 116-136, 134 Stat. 281 (2020) (the "CARES Act"), Centerra distributed a form to the Individual Plaintiffs and other CSOs titled "Employee CARES Act Benefit Certification." (Compl. ¶ 20.) This form advised Centerra's employees that it would seek reimbursement from USMS under the CARES Act for wages CSOs lost. The form requested that employees confirm that they had not received other federal or state benefits to compensate them for the losses. All Individual Plaintiffs certified they had not received such benefits and returned the form to Centerra.

On January 18, 2021, Centerra told CSOs and Lead CSOs, including Individual Plaintiffs, that it had secured approval of its request from the USMS and would receive funds to reimburse employees under the CARES Act for some of their lost wages between March 29, 2020 through July 31, 2020 (the "Jan. 18, 2021 Communication"). Centerra's announcement clarified that "eligibility for the CARES Act reimbursement was at the sole discretion of USMS." (Id. ¶ 22.) The Jan. 18, 2021 Communication continued by explaining that Centerra did not have

> any control of how each government agency interprets the application of CARES Act, the date of eligibility, or how much funding will be made available . . . It is important to remember that funding for these hours is wholly at the discretion of each government agency and the Company is only able to reimburse up to a set number of agreed upon hours. . . . While we have captured all hours impacted, employees should realize not all hours identified met the USMS interpretation of CARES Act criteria for reimbursement.

(Id. ¶¶ 22-24.) On or around the same time that Centerra issued the Jan. 18, 2021 Communication, Centerra distributed the CARES Act funding it had received. Centerra distributed funds to only regular CSOs, not Lead CSOs, and none of the Individual Plaintiffs received a distribution despite having used sick leave or paid time off to offset lost wages.

USCSO, through its attorney, then requested from the USMS "guidance or instructions given to the contractors in

connection with how they should allocate funds, including but not limited to the circumstances under which CSOs are eligible for reimbursement and the applicable time period(s) covered by the disbursements." (Compl. ¶ 27.) USMS directed USCSO to seek the information through a Freedom of Information Act ("FOIA") request, which USCSO did, via email, on April 13, 2021 (the "FOIA Request"). Once in receipt of the FOIA Request, USMS told USCSO that it processed FOIA requests on a first-come, first-served basis. At the time this action was filed, USMS had neither timely issued a determination nor produced documents in response to the FOIA Request.

USCSO, through its attorney, also sent an inquiry to Centerra about the distribution of CARES Act funds. USCSO sought from Centerra "[a]ny guidance or instructions given by the [USMS] to [Centerra] concerning how Centerra Group LLC should allocate CARES Act funds to CSOs, including but not limited to circumstances under which CSOs are eligible for reimbursement and the applicable time period(s) covered by the disbursements." (Id. ¶ 31.) Centerra refused to provide the requested information, pointing to the terms of the collective bargaining agreement between USCSO and Centerra and characterizing any communications between Centerra and USMS as "confidential and proprietary." (Id. ¶ 32.)

In the Spring of 2020, USMS provided additional funds to Centerra under the CARES Act to reimburse employees for the time period of August 1, 2020 to September 30, 2020. Centerra again distributed that reimbursement to only CSOs, not to any Lead CSOs, including the Individual Plaintiffs. According to Plaintiffs, "none of the Individual Plaintiffs have received CARES Act monies or reimbursement for their lost wages or accrued paid time off during the March 29, 2020 through September 30, 2020 time period." (Id. ¶ 35.)

B.   PROCEDURAL HISTORY

Plaintiffs brought this action in February 2022. (See Compl., Dkt. No. 1.) Consistent with the Court's Individual Practices, USMS wrote to Plaintiffs regarding an anticipated motion to dismiss Counts I and II of the Complaint and requesting a pre-motion conference.[2] (See Dkt. No. 10.) Plaintiffs responded to USMS's letter, and USMS advised the Court that the informal practice was unsuccessful in resolving the dispute and that the parties were unable to avoid motion practice at this time. (See Dkt. No. 11.)

After adopting the parties' proposed briefing schedule on the motion, USMS moved for a brief stay of the schedule to

---

[2]  Count II of the Complaint was brought under FOIA, 5 U.S.C. § 552(a)(6)(A)(i), for USMS's failure to timely make a determination on USCSO's FOIA Request and promptly make records available. (See Compl., Count II.)

allow the parties to determine whether they could resolve Count II of the Complaint, Plaintiffs' FOIA claim, without litigation. (See Dkt. No. 20.) The Court approved the parties' stipulation and the FOIA claims under Count II of the Complaint were dismissed from the action. (See Dkt. No. 24.)

USMS then filed its opening Motion as to only Count I of the Complaint, along with the supporting Declarations of Charlotte Luckstone and Angelica Spriggs, which appended the documents USMS produced in response to the FOIA Request (the "FOIA Production"). (See Notice of Mot.; Mot.; "Luckstone Decl.," Dkt. No. 27; "Spriggs Decl.," Dkt. No. 28.) Plaintiffs filed their opposition, ("Oppo.," Dkt. No. 29), and USMS filed a reply ("Reply," Dkt. No. 30).

## II.   **LEGAL STANDARD**

### A.   RULE 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual

allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006). In this context, courts must draw reasonable inferences in favor of the nonmoving party. See Chambers v. TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Although courts accept factual allegations in the complaint as true at this stage, this requirement does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

B.   RULE 12(b)(1)

"A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (quoting Makarova v. United States, 201 F.3d 110, 113

(2d Cir. 2000)), aff'd, 568 U.S. 85 (2013). "Determining the existence of subject matter jurisdiction is a threshold inquiry." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). While the court must take all facts alleged in the complaint as true, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Id. (citation omitted). In ruling on a motion to dismiss under Rule 12(b)(1), the Court is also "permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." M.E.S., Inc. v. Snell, 712 F.3d 666, 671 (2d Cir. 2013).

### III. DISCUSSION

The crux of the Motion, under both Rules 12(b)(6) and 12(b)(1), centers on, essentially, one disputed allegation: whether USMS decided and directed Centerra to exclude Lead CSOs from the CARES Act distributions. If the Complaint adequately pleads USMS made such a decision, directed Centerra to follow through with it, and that decision was contrary to law and arbitrary and capricious, then the Motion must be denied. The Court begins with the Motion under Rule 12(b)(1).

A.   <u>SUBJECT MATTER JURISDICTION</u>

USMS argues that dismissal of the Complaint is appropriate under Rule 12(b)(1) because Plaintiffs lack Article III standing. Under Article III, the federal courts of the United States have subject matter jurisdiction to adjudicate only "Cases" and "Controversies," that is, the "set of requirements that together make up the 'irreducible constitutional minimum of standing.'" <u>Lexmark Int'l v. Static Control Components, Inc.</u>, 572 U.S. 118, 125 (2014) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)). To establish Article III standing, Plaintiffs must show that they have (1) suffered a "concrete and particularized 'injury in fact'" that is (2) "fairly traceable to the challenged action of the defendant" and (3) is "likely to be redressed by a favorable judicial decision." <u>Id.</u> The first prong is satisfied as the Individual Plaintiffs were harmed by being excluded from the distribution of CARES Act funds. Neither party raises any argument to the contrary. Instead, USMS focuses its attack primarily on the second prong, causation.

USMS argues that "it was Centerra" -- not USMS -- "that made the decision to allocate its CARES Act funding to CSOs at the exclusion of Lead CSOs," and thus, USMS did not cause Plaintiffs' injury. (Mot. at 10-11 ("Plaintiffs have failed to demonstrate that their alleged economic losses were *caused*

by any action on the part of USMS to exclude Lead CSOs from CARES Act reimbursements, because no such action ever took place.") (emphasis in original).) USMS points to the statement made by its declarant, Angelica Spriggs ("Spriggs") an Assistant Chief with the USMS during the relevant time period, in support of this proposition. Spriggs declares that "[a]t no time did USMS direct Centerra in any way as to how to allocate the CARES Act funding it received among its Court Security Officers and its Lead Court Security Officers." (Spriggs Decl. ¶ 10.)

Plaintiffs counter that exactly the opposite occurred: that USMS caused their harm by directing Centerra to distribute the funds to the exclusion of the Lead CSOs. (Oppo. at 13-15.) Plaintiffs point to Centerra's statements in the Jan. 18, 2021 Communication that eligibility for CARES Act reimbursement was determined "at the sole discretion of USMS," and that "not all hours identified [by Centerra] met the USMS interpretation of CARES Act criteria for reimbursement." (Id. at 13 (citing Compl. ¶¶ 22-24).) Plaintiffs also dispute the propriety of considering the statements made and the documents attached to the Spriggs Declaration at this procedural stage. (Id. at 11-12.)

Whether Plaintiffs have adequately pled causation to survive the Rule 12(b)(1) motion depends largely upon careful

application of the standard of review discussed in Section II.B, *supra*.

USMS funnels its argument here through the Spriggs Declaration as well as the documents USMS produced in response to Plaintiffs' FOIA Request.[3] To that end, USMS is correct that on a Rule 12(b)(1) motion the Court may consider "non-conclusory, non-hearsay statements outside the pleadings." Snell, 712 F.3d at 671. Thus, generally, it would be appropriate for the Court to consider the statements made in the Spriggs Declaration. The Court finds, however, that even if it were to consider those statements, they ultimately are unavailing.

Although Spriggs states she was the "Contracting Officer in the USMS's Judicial Security Division's Office of Security Contracts" and "has responsibilities relating to the USMS's Court Security Officer contracts" (Spriggs Decl. ¶ 1),

---

[3] Neither party provides a legal basis for the Court to take judicial notice of or otherwise consider the statements made in the correspondence and memoranda comprising the FOIA production. And the Court finds the statements would not fall within any ambit of permissible review as the contents therein likely constitute "[]hearsay statements outside the pleadings" at this point. Snell, 712 F.3d at 671.

To the extent the Court considers the FOIA Production, it is appropriate to do so only for the purposes of recognizing its existence and legal effect, in essence, that the production was completed and that USMS engaged in communications with Centerra; the Court does not consider the documents or statements for the truth of the matters asserted therein. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991); Fine v. ESPN, Inc., 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014) (finding that a court may take judicial notice of "public records" "only to establish their existence and legal effect . . . not for the truth of the matters asserted") (citation omitted).

nothing in the Declaration suggests, let alone establishes, that she had direct personal knowledge or involvement in the review, approval, or disbursement of CARES Act funds to Centerra. See Individual Practices of U.S.D.J. Victor Marrero, § II.E (requiring affidavits to be made "on the basis of personal involvement or knowledge of pertinent facts"). And while it appears that Spriggs reviewed the memoranda attached at Exhibits C and D to the Declaration, and, on the basis of that review, concluded that those memoranda "did not direct Centerra as to how it should allocate that amount among its employees," that does not provide a basis for her overarching conclusion that USMS did not "direct Centerra in any way as to how to allocate the CARES Act funding it received."[4] (Spriggs Decl. ¶¶ 8-10.) The Court accords Spriggs's statement little weight.

Without Spriggs's statement standing in their way, Plaintiffs "affirmatively" establish jurisdiction. While the Court must accept the pleadings as true, unlike a Rule 12(b)(6) Motion it cannot draw favorable inferences in Plaintiffs favor. See Morrison, 547 F.3d at 170. But even without drawing any inferences, the Court is persuaded that

---

[4] To the extent that it is possible that Spriggs was involved in preparing the memoranda attached at Exhibits C and D or in the correspondence between Centerra and USMS (see Luckstone Decl., Ex. B), the Declaration fails to specify so, and, because all personal identifying information is redacted, the Court is unable to discern otherwise.

Plaintiffs' allegations as to Centerra's statements show that, if true, USMS directed Centerra as to which employees were or were not eligible for CARES Act reimbursement, and thus caused Centerra to distribute the funds accordingly. Such allegations are sufficient to make the Individual Plaintiffs' injuries fairly traceable to USMS, and thus the causation prong of Article III standing is established.

USMS also attacks standing in the form of arguments directed at sovereign immunity. USMS posits that the Court lacks subject matter jurisdiction because "the APA does not waive sovereign immunity for the economic damages Plaintiffs are seeking." (Mot. at 13.) Further, USMS argues that Plaintiffs have not shown that USMS "failed to take a *discrete* agency action that it is *required to take*." (Reply at 5 (citing Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004)).) Essentially, USMS contends that Plaintiffs cannot "point to any provision of the CARES Act that required USMS to allocate CARES Act funding to Lead CSOs." (Mot. at 18 (internal quotations omitted).)

Plaintiffs counter that their request for "lost wages and/or loss of accrued paid time off" is not a suit for "money damages" but is more properly construed as "equitable relief that happens to include the payment of money." (Oppo. at 16.) Plaintiffs assert that they have adequately shown USMS failed

to take the discrete and required action of reimbursing Lead CSOs' eligible lost wages.

The Court agrees with Plaintiffs. Courts "have long recognized the distinction between an action at law for damages . . . and an equitable action for specific relief . . . . The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" Bowen v. Massachusetts, 487 U.S. 879, 893 (1988). In the case of equitable relief under the APA, such action is "not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." Id. at 900 (emphasis in original). Such is the case here, and so Plaintiffs' claims for reimbursement do not violate norms of sovereign immunity.

USMS's argument that the CARES Act does not require USMS to take any discrete action under the plain text of the statute is not persuasive. USMS is correct that the CARES Act grants some discretion, which is that the "funds made available to an agency . . . *may be used* by such agency." See CARES Act § 3610 (emphasis added). But that discretion is not unlimited; it ends at the requirement to reimburse "*any* paid

leave, including sick leave." Id. (emphasis added). As such, USMS must reimburse paid or sick leave that conforms to the following: the reimbursement was requested "at the minimum applicable contract billing rates not to exceed an average of 40 hours per week"; did not extend "beyond September 30, 2020"; involved only the contractor's "employees or subcontractors [that] c[ould not] perform work on a site that ha[d] been approved by the Federal Government, including a federally-owned or leased facility or site, due to facility closures or other restrictions, and who c[ould not] telework because their job duties c[ould not] be performed remotely," and was reduced by the other benefits and reimbursements the employees may have already applied for and received. Id. No other exceptions or discretion applies.

USMS's argument "incorrectly equates . . . [USMS's] decision to exercise [its] discretion to" make funds available under the CARES Act -- "that is, [its] decision to act -- with [its] decision *not* to make [the funds available] -- that is, [USMS's] decision to refrain from acting." See Shands v. Jacksonville Med. Ctr., Inc. v. Azar, 366 F. Supp. 3d 32, 60 (D.D.C. 2018) (arising in the context of judicial review of agency action). In such a way, once USMS used its discretion to approve the CARES Act funds for Centerra, it was required to make such funds available to all of the

16

contractor's employees that were eligible by fitting within Section 3610's purview. And, as alleged, each of the Individual Plaintiffs fell within those bounds of eligibility.

This conclusion is bolstered by the fact that the suit challenges USMS's alleged action as arbitrary and capricious. See Scholl v. Mnuchin, 494 F. Supp. 3d 661, 681 (explaining in the context of review of final agency action under the CARES Act that the allegations were sufficient because "the gravamen of the complaint is that [the agency's] decision to exclude . . . was both contrary to law and arbitrary and capricious" where the "suit 'questions the administrative procedures' by which the [agency] arrived at its decision."). Essentially, Plaintiffs have alleged that by excluding Lead CSOs from the distributions that USMS failed in its "duty to explain its ultimate action." Velesaca v. Decker, 458 F. Supp. 3d 224, 237 (S.D.N.Y. 2020) (citation and quotation omitted). Accordingly, Plaintiffs have established Article III standing and the Court has subject matter jurisdiction over the matter. The Motion under Rule 12(b)(1) is denied.[5]

---

[5] To the extent that USMS argues that USCSO should be dismissed from the case, USMS abandons that argument in its Reply. Nonetheless, the Court agrees with Plaintiffs that the so-called "one plaintiff" rule applies here and, because the Individual Plaintiffs have standing, USCSO need not be dismissed.

B.   FINAL AGENCY ACTION

With subject matter jurisdiction established, the Court turns to USMS's Motion under Rule 12(b)(6), for failure to state a claim under the APA. Although brought under Rule 12(b)(6), USMS's motion is, fundamentally, jurisdictional. Under the APA, judicial review is limited to "(1) final agency action (2) not committed to agency discretion by law (3) where Congress has not implicitly or explicitly precluded judicial review." Larson v. United States, 888 F.3d 578, 587 (2d Cir. 2018). Neither party raises concerns with the final two prongs and so the Court is tasked with determining only whether USMS's alleged action was final.

"[T]wo conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow." Bennet v. Spear, 520 U.S. 154, 177-78 (1997).

USMS's argument here is very much the same as their argument with respect to standing: USMS did not tell Centerra how to distribute the CARES Act funds to the exclusion of Lead CSOs. USMS argues that Plaintiffs "failed to allege that the first prong of the finality test has been

met . . . because nothing in Plaintiff[s'] complaint alleges that USMS made a deliberate decision following the consummation of a formal agency decisionmaking process to determine how Centerra's CARES Act reimbursements should be allocated among Centerra's employees." (Mot. at 8-9.) USMS points a finger at Centerra, arguing that "[i]f nothing else, Plaintiffs' complaint alleges that Centerra made the decision" to exclude Lead CSOs. (Id. at 9.) Plaintiffs respond that they have adequately pled final agency action, directs the Court's attention again to the Jan. 18, 2021 Communication, and cites cases from other jurisdictions finding that agency determinations regarding CARES Act distributions constitute final agency action. (Oppo. at 8-11.)

The Court finds that Plaintiffs have adequately alleged final agency action. Plaintiffs allege that Centerra applied for CARES Act reimbursements, that USMS approved the application and provided funds, and, most critically, that USMS made determinations about how it would "interpret[] the application of [the] CARES Act, the dates of eligibility, or how much funding will be made available," and that "not all hours identified met [] [its] interpretation of CARES Act criteria for reimbursement." (Compl. ¶¶ 22-24.) If this allegation is true, USMS's interpretive decision and

direction to Centerra regarding which of Centerra's employees were eligible for reimbursement bears the hallmarks of a final agency action.

First, it represents the consummation of USMS's decisionmaking process. USMS was faced with Centerra's application for reimbursement, it interpreted the CARES Act and formally approved the application and disbursed funds. As alleged, part of that decision was the final determination that Lead CSOs would not receive reimbursement but that CSOs would. There is no suggestion that such a decision would change. And the legal effect of the formal correspondence between USMS and Centerra in the FOIA Production (see generally Luckstone Decl., Ex. B) signals that the agency was given "a full opportunity to consider and correct its own mistakes," Runaway Dev. Grp. v. Pentagen Tech. Int'l, Ltd., 396 F. Supp. 2d 471, 474 (S.D.N.Y. 2005) (quotations omitted), and "arrive at a reasoned, deliberate decision" about which of Centerra's employees were eligible. ONRC Action v. Bureau of Land Mgmt., 150 F.3d 1132, 1136 (9th Cir. 1998).[6] Nothing about this decision indicates that it was interim or

---

[6] Luckstone, USMS's FOIA Officer, herself describes the documents as "correspondence with Centerra personnel regarding funding *modifications* specific to Centerra," strongly suggesting that issues were corrected as they arose. (Luckstone Decl. ¶ 6 (emphasis added).) And the FOIA Production shows that USMS produced formal memoranda to Centerra representing a final decision. (See Spriggs Decl. ¶¶ 8-9.)

temporary; the funds have been disbursed and distributed. The first prong is established.

Second, the decision to deny Lead CSOs reimbursement affects their rights and is one from which legal consequences flow. As discussed above, the CARES Act required USMS, once it determined in its discretion it would provide funds to certain contractors, to reimburse "*any* paid leave, including sick leave" to eligible individuals, provided they met the delineated requirements. See CARES Act § 3610 (emphasis added). "Accordingly, the decision to deny those payments to a specific segment of [CSOs] is one where a right has been determined." Scholl v. Mnuchin, 494 F. Supp. 3d 661, 679 (N.D. Cal. 2020) (assessing IRS decision to deny economic impact payments under the CARES Act to certain incarcerated and formerly incarcerated individuals). Plaintiffs have therefore adequately alleged the USMS's determination was a final agency action subject to judicial review.

Of course, USMS categorically denies all of the above, stating unequivocally that USMS never directed Centerra how to allocate the funds. As discussed, USMS points to the FOIA Production and Spriggs and Luckstone Declarations in support. USMS's assertion is in direct conflict with the clear allegations made by Plaintiffs that USMS determined who was eligible in its "sole discretion" and that not "all hours

identified met the USMS interpretation of CARES Act criteria for reimbursement." (Compl. ¶ 22-24.)

The Court cannot resolve this issue at the motion to dismiss stage as the issue raises a genuine dispute of material fact that requires further evidentiary development. And while USMS is correct that judicial review under APA § 706 is confined to "the administrative record compiled by the agency when it made the decision," Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997), USMS's suggestion that no administrative record exists here is contradicted by the existence of the FOIA Production. Further, to the extent that USMS argues that the face of the documents in the FOIA Production establishes that USMS never directed Centerra in any way, USMS concedes that the FOIA Production is not inclusive of every possible relevant document as it was limited only to those documents that USMS's FOIA specialists determined were responsive to Plaintiffs' FOIA Request.[7] (See Reply at 4 n.1.) This observation suggests the existence of

---

[7] While the Court recognizes that it is "settled that deference is due to the agency's judgment as to what constitutes the whole administrative record," that proposition is not the end of the story. Comprehensive Comm. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012). Although facing an uphill battle in rebutting that presumption, a party may supplement the administrative record by showing "that materials exist that were actually considered by the agency decision-makers but are not in the record as filed," id., or the court may "undertake an extra-record investigation . . . 'where the absence of formal administrative findings makes [extra-record] investigation necessary in order to determine the reasons for the agency['s] decision.'" Saleh v. Blinken, 596 F. Supp. 3d 405, 413 (E.D.N.Y. 2022) (quoting Nat'l Audubon Soc'y, 132 F.3d at 14).

other documents that are properly part of the administrative record and that would aid in resolving this dispute with finality. Until then, this action must continue.

## IV.  <u>ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendant United States Marshal Service ("USMS") (Dkt. No. 25) to dismiss Count I of the Complaint of plaintiffs United States Court Security Officers, Alejandro Acevedo, Frank Forster, Anthony Gatto, Brian Gillespie, Timothy Hertel, Cephas Hunter, Thomas Kaufer, Marta B. Rivera, Robert Ruggiero, and Anthony Venturella is **DENIED**. USMS is directed to respond to the Complaint within twenty-one (21) days of the date of this Decision and Order.

**SO ORDERED.**

Dated:      3 April 2023
            New York, New York            _____
                                              Victor Marrero
                                                U.S.D.J.